WILLIAM POULSON, Respondent, v. J. M. COLLIER, Ap-
pellant.

### Kansas City Court of Appeals, July 6, 1885.

1. PRACTICE—VERDICT—SURPLUSAGE. — Where the verdict of a jury
contained the recital "under the instructions of the court," that
portion of the verdict was surplusage.   In practice, the jury are not
allowed to explain their reasons.     Chitty's General Practice, vol. 3,
p. 920.   And there is no pretense that the court directed the jury to
find the verdict returned by them.   *Perry v. Beard,* 1 Mo. 637, *dis-
tinguished.*   See *Hancock v. Buckley, ante, p.* 459.

2. ——— POLLING THE JURY.—Either party has a right to demand the
polling of the jury.   *Norvell v. Devall,* 50 Mo. 272.   But the ques-
tion should be, "Is this your verdict?" and, after the answer, it is
not proper to inquire into the jury's reasons for making the answer.
*Rankin v. Harper,* 23 Mo. 587, *distinguished.*

3. ——— FINDING MUST BE BY THE JURY.—The courts can not substi-
tute their findings for those of the juries; and the finding of every
material fact the jury must make for themselves.   *Henley v. Ar-
buckle,* 13 Mo. 211; *syllabus* in that case not borne out by the opin-
ion.

4. ——— PLEADING—NOTE FILED AS EXHIBIT.—An instrument filed as
an exhibit constitutes no part of the petition; and where a note, as
pleaded, called for only simple interest, a judgment rendered for an
amount of damages greater than that laid in the petition is errone-
ous.   *Moore v. Dixon,* 50 Mo. 425.

5. PAYMENTS—DIRECTION OF THEIR APPLICATION.—It is settled law that if
there are two demands against a person, the debtor has a right to

direct to which demand the payment shall be applied.    But if the
debtor, at the time of payment, does not direct the application, the
creditor may, at any time, apply it to which demand he pleases.
*Gartner v. Kemper*, 58 Mo. 570.    The application by the creditor
can be shown by verbal declaration, or by an account rendered de-
claring the application.    If, at the time of suit, no application has
been made the court should make it, under the rules of law appli-
cable to it.

Appeal from Clinton Circuit Court, Hon. Geo. W.
Dunn, J.

*Reversed and remanded.*

Statement of case by the court.
This suit was tried on the following petition:
"Plaintiff states that defendant, by his promissory
note hereto annexed, dated May 4, 1876, promised, for
value received, to pay plaintiff one hundred dollars, six
months after the date thereof, with interest from date at
the rate of ten per cent. per annum. That the interest
accruing on said note prior to May 4, 1877, has been paid,
and that said note and the balance of the interest are yet
due plaintiff and for which he asks judgment."
The answer of defendant was as follows:
"Now comes the defendant in the above cause and
for answer to plaintiff's petition says, that one John
Stevenson, whose name is subscribed to the note described
in plaintiff's petition, executed the same as principal;
and that the defendant, at his request, signed said note
as surety, and received no part of the consideration for
which said note was given, all of which the plaintiff well
knew.
"That on the —— day of October, 1877, the said
Stevenson, in order to provide for the payment of said
note, conveyed, assigned, and set over to the defendant,
all those tenements situated in the town of Cameron, in
said county, and known and described as lot number 2,
in block number 28, on the plat of said town.    That it
was then and there agreed by and between said plaintiff
and the said Stevenson, that plaintiff should enter into
possession of said tenements, and let the same to such

person or persons as he might choose, and receive and collect the rents and profits thereof, and apply the same as they accrued, in payment of said note; that in pursuance of said agreement, the plaintiff then and there entered into said premises and took possession thereof, and let and rented the same for a long time and received and collected the rents arising therefrom, and that the monies received from said rents have long since paid off and discharged said note and all the interest due thereon.

"And for further answer defendant says that he executed the note sued on as security for one John Stevenson, whose name is also signed to said note, and at his request, and received no part of the consideration for which said note was given, all of which plaintiff had full knowledge.

"That on the —— day of October, 1877, the said Stevenson, for the purpose of further securing said note and providing for the payment of the same, conveyed and assigned to the plaintiff all those tenements situated in the town of Cameron, in said county, and known and described on the plat of said town as lot number 2, in block 28; that it was then and there agreed between plaintiff and said Stevenson that plaintiff should enter into said property, and let and rent the same to such persons as he chose, and collect and receive the rents thereof, and apply the same as they accrued in the payment of the note sued on; that plaintiff then and there did take possession of said tenements, and rented the same, and continued in possession, and to receive the rents thereof, for a long time, to-wit, for the period of over four years; that after he had received a large sum of money from the rents aforesaid, and more than was necessary to discharge the debt upon said note, the plaintiff, instead of applying the same to the payment thereof, as he was in duty bound, squandered the same in a fruitless effort to retain possession of said tenements, and to continue in the receipts of the rents and profits thereof, beyond the time when such possession was necessary to the discharge or security of his debt; that on the 17th day of March,

1881, suit was instituted in this court for the possession of said lot, by one William Orr, against the plaintiff; that at that time plaintiff had received, and had in his possession, a sum of money sufficient to discharge said note and all claims which he then had against said Stevenson, and his right to possession of said property under the agreement aforesaid had ceased and terminated; that instead of delivering up the possession of said property, as the said Orr requested him to do, before the commencement of said cause, and applying the rents and profits in his hands in payment of said note, he entered upon a fruitless and unnecessary defence of said suit, and has squandered the said rents and profits in said defence. Wherefore defendant says that he is discharged from liability on, or because of his executing said note aforesaid, and he prays to be dismissed with costs."

The reply was a general denial. The plaintiff read in evidence the note sued on, together with the endorsements thereon, as follows:

"$100.00.     Cameron, Mo., May 4, 1876.

"Six months after date we promise to pay to the order of Wm. Poulson the sum of one hundred dollars, for value received, to bear ten per cent. interest per annum from date. If the interest is not annually paid to become as principal, and bear the same rate of interest, payable without defalcation or discount. And we hereby waive all rights of exemption of property under the laws of Missouri or any other state, and agree that any property we may have shall be liable for the payment of this note. And we further agree to pay all costs and all attorney fees, should this note have to be collected by law, including all expenses of collection.

"Due November 4, 1876.     James Stevenson,

"J. M. Collier."

The endorsements are as follows:

"November 4, 1876, interest paid on the within to this date.

"May 4, 1877, interest paid on the within to this date."

Plaintiff then rested.

The defendant, then, to sustain the issues on his part, was sworn as a witness in his own behalf, and testified as follows:

"I signed this note as security for James Stevenson. It was given for money loaned by plaintiff to said Stevenson. I received no consideration for signing the note. In October or November, 1877, the plaintiff took possession of a house and lot in Cameron, belonging to Stevenson, and rented it to get his pay on the note; he had another note at the time of one hundred dollars against Stevenson; this note was not secured. Plaintiff about that time told me that he had been to see Stevenson, and that Stevenson had told him to take possession of the property, and rent it, and collect the rents until he got his pay on both notes, and that he was doing so. I was occupying the barn on the lot at the time, and plaintiff said that if I would keep it, and pay him rent for it, he would apply whatever I paid in payment of my note. I kept the barn, at his request, and paid him altogether $28.30; this he agreed, in consideration of my keeping the barn, to credit on the note I was on.

"In August, 1880, he gave me a piece of paper which he said contained a list of all the rents he had received up to that time, and told me to figure it up and see how near it came to satisfying the notes. He said he guessed he had pretty near got his pay. I kept the paper two or three days, but did not get time to make the calculation; the whole amount of credits at that time, shown by the paper, was $225.00.

"A few days afterwards plaintiff came and said we could get Mr. Riggs to make the calculation, as his school had not begun yet; so he took the paper and gave it to Riggs. Plaintiff continued to collect the rents a long time after that; I think he kept it until last spring, that is the spring of 1882. Mr. Sidebottom occupied it nearly all the time plaintiff was in charge of it.

"Sometime after that, in October, I think, 1880, the property was advertised for sale for taxes, and Mr. Poulson came down to bid it in. After he had come back he

told me that Orr had paid the taxes and would not let it come to sale. Orr had bought the property at a sale under an execution against Stevenson, and was claiming it. I says to him, 'you have got your pay on your notes, and hadn't you better give up the property to Orr? I don't believe Orr would pay out so much money unless he had a good claim on the property.' He said, 'I know I have got my money, but I can't give up the property, for I would be responsible to Stevenson if I gave it up to any one else.' I says, 'then I want you to give me my note ; you admit you have got your pay.' He says, 'I won't givé up the note, for maybe I can't keep the money.' I said, 'the notes are paid and I want mine.' He refused to give up my note. I afterwards, about the time Orr brought suit, had another conversation with him about it ; I urged him then to give up the property to Orr, and offered to pay anything that was yet due on my note if he would give it up ; he refused to do so, but offered to give me my note if I gave him a hundred dollars. I says 'why should I give you a hundred dollars? you have before admitted that the note is paid, but if there is any balance due I will pay it ; give up the property and make the calculation, and if there is any balance due I will pay it.' He refused to do so, but demanded a hundred dollars.

"Plaintiff never made any improvements upon the property, except that he changed the stable door from a swinging door to a sliding door, and he put a curb around the well ; this was made of a store box which he got and put over the well ; the change in the stable door was not necessary, as the doors did very well as they were."

Defendant then introduced Isaac Sidebottom, who testified as follows :

"I occupied the house and lot spoken of by Mr. Collier ; I rented it of Mr. Poulson ; I went in in the spring of 1878 ; I paid five and fifty one-hundredths dollars per month for winter months, and six and fifty one-hundredths dollars for summer months ; I was in it over three years ; I paid Mr. Poulson rent for the whole time ; I occupied it in August, 1880, and from that time until

March 15, 1881, and before and after; I paid him the rent between those dates, and for the time it would average, I should say, six dollars per month ; I do not know the whole amount of rent I paid him. Mr. Poulson never made any repairs on the property while I was in it, except to put a dry goods box around the well for a curb, and make half of a division fence between that and an adjoining lot; he took the whole fence down and used the materials to rebuild the half of it; the adjoining owner built the other half. He always refused to make repairs ; he said he was only renting the property to save some money which Stevenson owed him, and he would not make repairs. I occupied the property from the spring of 1878 until Poulson gave it up, last May, that is May, 1882."

Defendant then read in evidence the following : ''It is admitted that if William Orr was sworn as a witness in this case, he would testify that when he was on his way to Plattsburg to begin suit in ejectment against the plaintiff for possession of the property described in defendant's answer, he met plaintiff in Cameron, and there proposed to plaintiff that if he would surrender peaceable possession of the property, without suit, he would permit him to retain all rents he had up to that time collected, and make no claim against him for any part thereof, and that plaintiff refused."

Defendant then read the endorsement of the clerk of the date of filing the petition in the case of William Orr against William Poulson, as follows :

"William Orr against William Poulson, petition filed March 15, 1881."

Defendant then introduced Z. Provolt, who testified that at the October term of the circuit court at Plattsburg, Mo., for 1880, the plaintiff told him that he had got all the money that Stevenson owed him out of the rents of the property, except about five dollars. The property had been advertised for sale for taxes, and he said he had come down to bid on it. "He told me that Orr had paid the taxes on it and it did not come to sale. We had this conversation as we were going up to the

depot on our way home. He said he was about paid, or pretty near it."

Defendant then read in evidence the deposition of Brutus Riggs, who testified as follows:

"Two years ago last August, Wm. Poulson came to me with two notes with over fifty payments to be applied to these two notes, payment ranging from fifty cents to eight dollars and one-half. He wanted me to calculate the interest on these notes and apply the payments in the order in which they were made. One of these notes was given by John Collier, or his name was to it. Each of these notes was for one hundred dollars. Don't know that I ever calculated the interest on any other note for Poulson, to which Collier's name was signed. These payments were to be applied to these notes, but don't know that they were endorsed on the back of the notes. Poulson gave me to understand that these payments were rents for some buildings, a dwelling and barn I think. He said that he was getting his pay on these notes from these rents. I don't remember on which notes these payments were applied first. I applied them first to one note until it was discharged, and then to the other. There was a balance left unpaid on the second note of not over thirty-six dollars, and I think a considerable sum less than that. He said that he had made a rough estimate, and thought he would lose about forty dollars. He said the notes were drawing fifteen per cent. interest, but he had me calculate ten per cent. I think the notes read ten per cent.          B. RIGGS."

Defendant then rested.

The plaintiff, to sustain the issues on his part, testified in his own behalf as follows:

"In the fall of 1877 I held two notes against James Stevenson, each for one hundred dollars; one was not secured, and the other had defendant as security; the first is dated Sept. ——— day of, 1875, bears interest at ten per cent. compound; interest on it had been paid up to Sept. ———, 1877; the other note is the one sued on, and the interest on it has been paid to May 4, 1877. I heard that Stevenson had failed, and on November 23,

1877, I went up to see him about these notes and to get him to secure them. I saw him, but he didn't make any arrangements about the pay, and claimed the property as his homestead. A few days after I came back, his wife came to me at Cameron, and told me to take possession of this property, and take care of it, and use it just as if it was my own, until they called for it; to rent it and collect the rents, and keep the money for them; that it was their homestead, and all they had left. I took possession of the property on December 6, 1877, and have had possession of it until last May. I intended to get my pay out of the rents of the property for what he owed me on the notes, if I could. I rented it first to Charles Fletcher, and then in the spring I rented it to Sidebottom. I kept an account, as received, of every cent of the money I received from the property, and here it is."

Plaintiff then read to the jury the following from a book in which plaintiff kept his accounts:

(Charges against himself for rent received on seventy-two different occasions, amounting in the aggregate to $333.75, of which said sum $257.75 was received by him before the institution of the ejectment suit of Orr, in sixty-two payments).

"I took care of the property while I had it in my possession, and expended some money in keeping it in repair. My account for such repairs and charges for attending to it are as follows: I made only such repairs as were required to keep the property in condition to rent or preserve it, and refused to make any others, as I thought I had no right to make any others."

Plaintiff here read from memorandum, kept by items, of repairs of barn, house, sidewalk, gate, and cistern, amounting in the aggregate to eighty dollars, and claims for his service in renting and attending to property, and collecting rents, fifty cents per month—or twenty-six dollars—repairs and services amounting to the aggregate sum of one hundred and six dollars. The repairs were made before Orr sued for the property.

"I never told. the defendant that if he would keep the stable I would apply the rent of that on his note ; nor did I tell him Stevenson told me to take possession of the property and apply the rents to the payment of these notes, or either of them. Orr brought suit against me for the property, and got judgment for the possession, and two hundred dollars damages. I have paid that judgment, and surrendered the property last May. The amount so paid was two hundred dollars, damage, and twenty-seven dollars' costs. That suit was begun in the spring of 1881. E. J. Smith was my attorney in the case. I didn't tell Provolt, in October, 1881, that I had got my pay all except five dollars. I never admitted that the notes were paid, to any one, for it was not true. When Orr came to bring suit, he offered, if I would give up the property, to let me keep what rents I had collected."

Plaintiff then offered to prove that he was advised by his attorney not to accede to Orr's proposition, and not to give up the property to him ; to the introduction of which testimony defendant objected, which objection the court overruled and admitted the testimony, to which action and ruling of the court defendant excepted at the time. Whereupon witness proceeded as follows, to-wit :

"I went to my attorney, E. J. Smith, and he advised me that I should not give up the property, as he said Orr's claim to the property was not good, and could be defeated ; that my duty to Stevenson required that I should defend the suit. On this advice I acted."

*Cross-examination :* "I kept this account of all the receipts from the property at the time, and entered every item at the time I received it. I do not know what the receipts amounted to on the 13th day of March, 1881 ; the account will show ; I remember that Mr. Orr, about that time, began suit ; before he sued he requested me to give up the property to him, and agreed that if I would do so he would not sue and I could keep all the money I had collected up to that time. I refused to give up the property, under the advice of my attorney, as stated

before. I have not heard from Stevenson since; I don't know where he is. Stevenson never made an appropriation of the rents to any purpose. His wife told me, when she told me to take possession, that it was their homestead, and to keep the rents for them. I did not set down all the items of expenditure at the time made. I kept a book account of them as I did of the receipts of rent, except that some of the matters of repair were not set down as soon as made, but were set down shortly after.

"I got Mr. Riggs to make the calculation of the amount due upon these notes, in August, 1880. It was before his school began that year. I gave him a list of all the rents I had received up to that time, and the dates I had received them, and told him to make the calculation and see how much there was due then on the notes. I gave him both notes. He made the calculation and gave it to me. I don't remember what I did with it. I don't remember how much he found the balance to be.

"I did not testify in the trial of the suit between Wm. Orr and myself that Stevenson had put the property in my hands for the purpose of enabling me to get my pay on these notes. I said that his wife put it into my hands, and that I intended, if I could, to so apply the rents. But I was not authorized by any one to apply the rents to the payment of either of the notes."

*Re-examined:* "My charges for repairs are reasonable. I always intended to make these rents pay these notes if I could, but I was not authorized or directed to do so by any one."

Plaintiff here rested, and defendant, in rebuttal, offered in evidence the answer of plaintiff filed in the case of Wm. Orr against Wm. Poulson, which was admitted by the court and read to the jury. Said answer is in words and figures following, to-wit:

"In the circuit court of Clinton county, state of Missouri.

"William Orr, plaintiff,
           against
"William Poulson,
"Isaac Sidebottom, and
"George A. Hanlan, defendants.

"Now comes the defendant, William Poulson, and for his separate and first amended answer to plaintiff's petition denies each and every allegation therein contained, and further answering said action, the said defendant states that on or about the first day of October, 1877, the said defendant came into the possession and control of the premises mentioned in plaintiff's petition, and is now and ever since said date has been in the possession and control of said premises; that on said date, to-wit, on or about October the first, 1877, said premises were the individual property of one James Stevenson, and in his possession and under his control; that said Stevenson was the head of a family, and that said premises were his homestead; that at said date said Stevenson was indebted to the said defendant, the said Poulson, in the sum of about three hundred dollars; that said indebtedness was evidenced by two certain promissory notes on the part of the said Stevenson to the said defendant; that said notes were made, executed, and delivered to the said defendant by the said Stevenson, respectively, September 20, 1875, and May 4, 1876; that on or about the said first day of October, 1877, said notes were due and wholly unpaid; that on or about said date the said Stevenson, for the purpose of securing to the said defendant the payment of the said notes according to their tenor and effects, delivered to the said defendant the possession and control of said premises upon the stipulation that he, the said defendant, should take the possession of said premises and the control thereof, and should keep said premises in ordinarily good repair, should rent said premises, collect the rent and apply the same toward the payment of said indebtedness, and to treat said premises as though they were his own, to-wit:

the property of the said defendant, the said Poulson,
until the income from the renting of said premises as
aforesaid had aggregated in amount sufficient to reim-
burse said defendant for expenditures made by him upon
said premises in order to keep them in reasonably good
repair and in a tenantable condition ; and to fully pay
off and satisfy defendant's notes against the said Steven-
son and to pay him, the said defendant, for the caring
for the said premises as aforesaid, and for the renting and
collecting of the rents as aforesaid, and to then surrender
the possession and control of the said premises back to
him, the said Stevenson ; that said defendant accepted
the possession and control of said premises under said
stipulations and agreements, and still holds the posses-
sion and control of the same under and by virtue of said
stipulations and agreements with the said Stevenson ;
that in pursuance with said stipulations with the said
Stevenson, he, the said defendant, since the coming into
the possession of the premises as aforesaid has expended
upon the same in the making of necessary repairs thereto
a large sum, to-wit: about one hundred dollars ; that he
has collected as rents from various persons occupying
said premises as tenants under him, the said Poulson,
since the coming into his possession of said premises as
aforesaid, about two hundred and sixty dollars ; that the
said Isaac Sidebottom, one of the defendants in the above
cause, was a tenant of him, the said defendant, and as
such tenant, was occupying said property or premises at
the time the said plaintiff brought his said action ; that
there is still due the said defendant, from the said
Stevenson, on said notes, after the applying of the afore-
said two hundred and sixty dollars as aforesaid, from
the said Stevenson to the said defendant, on account of
the aforesaid indebtedness, and the repairs to the premi-
ses aforesaid, as aforesaid, and the renting and caring for
the same, as aforesaid, the sum of about one hundred
and fifty dollars ; that the said James Stevenson is wholly
insolvent, and that the only source from which defendant
can realize the amount of his said money, due from the
said Stevenson, is through the continued use and occu-

pation of the said premises as aforesaid. Wherefore defendant asks to be discharged with his costs in this behalf expended.        WILLIAM POULSON,
          "Per his attorney, E. J. SMITH."

This was all the testimony offered in rebuttal and defendant closed.

The plaintiff then offered to read in evidence, the balance of the pleadings in said cause, including answer of Hanlin, who was also a defendant in said cause of William Orr against William Poulson, and, also, the judgment on said cause; to the introduction of which the defendant, by his attorney, objected on the ground that the same was irrelevant, did not affect either of the parties to this case, and was offered out of time, and not in rebuttal to any thing introduced by the defendant. Which objection the court overruled and permitted said pleadings and judgment to be read to the jury. To which action and ruling of the court the defendant excepted at the time.

"William Orr, plaintiff,
          against
"William Poulson and
"Isaac Sidebottom, defendants.

"In the circuit court, within and for Clinton county, Missouri, April term, 1881.

"Plaintiff states that on the 23rd day of October, 1878, he was entitled to the possession of the following described premises situate in the county aforesaid, to-wit:   Lot number two, in block number seventy-eight, in Hunt and Godfrey's addition to the town of Cameron, and being so entitled to the possession thereof, the defendant afterwards, on said 23rd day of October, 1878, entered into said premises and unlawfully withheld from plaintiff the possession thereof to his damage in the sum of two hundred dollars.   He further avers that the monthly value of the rents and profits of said premises is ten dollars.   Wherefore, he demands judgment for the recovery of the premises, and two hundred dollars damages for the unlawfully withholding of the same from

plaintiff, and ten dollars per month for monthly rents and profits from the rendition of judgment until the possession of the premises is delivered to plaintiff, and for other proper relief.

"STEPHEN S. BROWN,
"*Att'y for Plaintiff.*"

"William Orr, plaintiff,
   against
"William Poulson,
"Isaac Sidebottom, and
"George A. Hanlin, defendant.

"Now, again, this day come the parties herein, and the trial of this cause is resumed. The court having heard all the evidence and the argument of counsel, finds for the plaintiff, and the court finds that plaintiff is entitled to the possession of the real estate in controversy, to-wit: Lot number two, in block number seventy-eight, in Hunt and Godfrey's addition to the town of Cameron, and the court finds that the plaintiff has been damaged by the unlawful withholding of the possession thereof, and assesses his damage at the sum of two hundred dollars ($200), and finds the value of the monthly rents and profits to be six dollars per month.

"It is, therefore, ordered, adjudged, and decreed by the court that the quiet and peaceable possession of said real estate be delivered to the said plaintiff, and that plaintiff recover of defendant the said sum of two hundred dollars as his damages, and the sum of six dollars per month from the rendition of the judgment until the delivery of the possession to plaintiff for rents and profits, and that he have execution therefor.

"It is further ordered that if possession of said property is not delivered to the plaintiff, the sheriff of this county shall take possession thereof, from the defendant, and deliver the same to the plaintiff in the form and manner in the statutes prescribed."

This was all the evidence in the case.

Against the objections of defendant, the court gave for the plaintiff the following instructions:

"1. Unless the jury believe from the evidence

that the note sued on has been paid by the rents received by plaintiff from the property in proof, they will find for the plaintiff the amount of said note and interest. If they believe that it has been partially paid, they will find for plaintiff the balance of said note and interest and the burden of proving that said note has been paid in whole or in part, is upon the defendant.

"2. If no appropriation of the rents to be received by plaintiff was made by Stevenson, then the plaintiff had a right to appropriate said rents to the payment of the note which was signed by Stevenson alone, and only such sum as remained in his hands after the satisfaction of said note and interest and the necessary costs of repairing the premises in proof, and a reasonable compensation for his services in renting the same and collecting the rents and the sum paid to Orr for damages, and the costs of that suit can be applied in satisfaction or part satisfaction of the note sued on."

The defendant asked, but the court refused to give, the following instructions :

"1. If the jury believe from the evidence that the note sued on was signed by defendant as surety for John Stevenson, and that said Stevenson placed the property described in defendant's answer, in plaintiff's possession in order that plaintiff might collect the rents and apply them in payment of the note sued on, and such other indebtedness as said Stevenson then owed plaintiff, and that plaintiff has received rents enough to discharge such indebtedness, together with the note sued on, they will find for defendant.

"2. If the jury believe that defendant signed the note sued on, as surety for one John Stevenson, and that said Stevenson placed the property described in defendant's answer in plaintiff's hands in order that plaintiff might receive the rents and apply them in payment of the note sued on and any other claims which plaintiff then held against said Stevenson, and that plaintiff retained the peaceable possession of said property, until he had received money enough from said rents to discharge said claim, together with the note sued on, they will find

for defendant, even though they may believe that plaintiff has expended such rents in defence of a suit afterwards brought against him for the possession of said property.

"3. If the jury believe that before William Orr brought suit against plaintiff for the possession of the property described in defendant's answer, he offered to permit plaintiff to retain all rents he had up to that time collected out of said property, if he would then deliver up peaceable possession of said property, they will find for the defendant; provided, they believe that plaintiff had up to that time received rents enough to discharge the note sued on, and any other claim plaintiff then held against said Stevenson; but they can not find for plaintiff more than the amount then due upon the note, after applying the money then in his hands in discharge of said indebtedness and the note in suit.

"4. The jury will apply, in discharge of the note sued on, all sums of money paid by the defendant, to the plaintiff as rent for the premises aforesaid, and which plaintiff agreed should be credited upon the note."

The court changed instruction number one asked by defendant, so that it read as follows:

"1. If the jury believe from the evidence that the note sued on was signed by defendant as surety for John Stevenson, and that said Stevenson placed the property described in defendant's answer, in plaintiff's possession in order that plaintiff might collect the rents and apply them in payment of the note sued on, and such other indebtedness as said Stevenson then owed plaintiff, and that plaintiff has received rents enough to discharge such indebtedness, together with the note sued on, over and above the amount expended in repairs, and reasonable compensation for his services, also deducting from the amount received for rents, the amount paid to Orr for damages, and costs recovered in this court, they will find for the defendant."

In which form the court gave said instruction and caused the same to be read to the jury. To which action of the court in refusing said instruction as asked by the

defendant and giving the same in its modified form, the defendant at the time excepted.

Whereupon, the jury retired to consider of their verdict, and having returned they handed to the court the following as their verdict:

"We, the jury find for the plaintiff the amount of the note sued on under the instructions of the court.

"John R. Green, *Foreman.*"

Whereupon, the counsel for the plaintiff made a calculation and announced to the court that the amount of the note sued on was one hundred and eighty-four dollars. And the court so changed the verdict as returned by the jury by interlineation as to make it read as follows:

"We, the jury, find for the plaintiff the sum of one hundred and eighty-four dollars, the amount of the note sued on, under the instructions of the court.

"John R. Green, *Foreman.*"

To which action of the court in so changing the verdict, the defendant at the time objected, but the court overruled his objection, and announced the verdict as changed by the court as the verdict of the jury ; to which action of the court in so changing said verdict and overruling defendant's objection thereto, the defendant at the time excepted.

Whereupon, defendant asked that the jury be polled as to the verdict as changed by the court. After several of the jurors had in turn answered in the affirmative to the question put by the court, "Is this your verdict?" one of the jurors, Willliam R. Ligon, answered, "Under the evidence it is not my verdict." Whereupon, the court remarked, "If that is your position that ends it, and the jury will have to be discharged." Thereupon, the court, against the objection of defendant, permitted plaintiff's counsel to question the juror, as follows: "If you take the instructions of the court and the evidence together, can you then say that this is your verdict?" And the juror answered, "If I am to be governed by the instructions of the court, it is." Whereupon, the court

proceeded with the polling of the jury, and one of the jurors answered, "Yes, under the instructions of the court." Another juror answered, "If we are to allow plaintiff the damages and costs of the Orr suit, it is our verdict."

Whereupon, the court ordered the verdict, as amended by the court, to be entered up as the verdict of the jury. To which action of the court, the defendant objected, for the reason that it was not the verdict of the jury, and that the verdict was not assented to by the jury; which objection the court overruled. To which action and ruling of the court, in entering said verdict and overruling defendant's objections, the defendant excepted at the time.

Judgment was accordingly entered against the defendant, and he has appealed therefrom to this court.

S. H. CORN, for the appellant.

I. The note sued on had been paid. The plaintiff made application of the rents of property in his hands, in discharge *pro tanto* of the notes he held against Stevenson, as fast as said rents accrued. The money having been once appropriated by the creditor in discharge of these notes, he cannot recall the application and revive the debts.

II. The court erred in instruction as to application of payments; it should have been made equally to both notes. *Blackstone Bank v. Hill*, 10 Pick.; *Merrimac Bank v. Brown*, 12 N. H. 320. If the assignment of property had been made to a third person, the duty of applying proceeds *pro rata* could not be questioned; the assignment to the creditor himself cannot vary the rule.

III. Plaintiff was not entitled to credit for expenses in the Orr litigation. Such expenses were not "reasonable" nor "necessarily incurred in the execution of the trust." Hill on Trustees 570. It was a question of fact for the jury under proper instructions, and not for the court. *Ib.*

IV. Defendant being surety was discharged by the misconduct of plaintiff—the trust fund (of the rents) was

squandered in needless litigation. *Rice v. Morton*, 19 Mo. 263; *Wilcox v. Todd*, 64 Mo. 388.

V. The verdict was never assented to by the jury. The amount ascertained was not found *by the jury. Cate's Adm'r, v. Nickel*, 42 Mo. 169; *Burghart v. Brown*, 69 Mo. 24.

VI. Judgment could not be rendered for a greater sum than demanded in the petition; not on the exhibits or proofs. *Moore v. Dixon*, 50 Mo. 424; *Baker v. Perry*, 37 Mo. 306.

VII. Instruction number five ought to have been given.

THOS. E. TURNEY, for the respondent.

I. The note was properly read in evidence. The answer did not admit the execution of the note as charged in the petition. This court will not interfere with the discretion confided to the trial court in opening and closing cases. *Richard v. Manhattan Insurance Co.*, 31 Mo. 518.

II. The court did not err in modifying defendant's instruction, allowing expenses to plaintiff for services, repairs and expenses of litigation. There is no *fraud* charged. *Taylor v. Hite*, 61 Mo. 142; *Gamble v. Gibson*, 59 Mo. 585. The *amount* to be allowed was submitted to the jury. The question whether it should be allowed was a question of law.

III. The verdict of the jury, before and after the interlineation complained of, was substantially the same; every issue was determined by the original verdict. *Henley v. Arbuckle*, 13 Mo. 209. But after the interlineation the jury was polled by defendant, and each juror assented to the verdict as interlined. When the verdict is merely *informal* the court may put it into proper form. *Substantial* omissions in the verdict may be supplied with the jury's consent so as to make it conform to their intent. *Henley v. Arbuckle, supra.*

IV. The words "under the instructions of the court" were surplusage. *State ex rel., etc., v. Knight*, 46 Mo. 83.

V. The mistake in the *amount* of the verdict was

corrected by a formal *remittitur*.　*Boatmen's Institution v. Kribben*, 48 Mo. 37.

VI. The verdict is not for more than is asked in the petition.

VII. The instruction as to application of payments given to plaintiff is correct. *Gartner v. Kemper*, 58 Mo. 567,

Opinion by HALL, J.

1. The defendant is in error in contending that the verdict was invalid by reason of the recital contained therein "under the instructions of the court."

That portion of the verdict was surplusage. "In practice the jury are not allowed to explain their reasons * * * ." Chitty's Gen. Prac., Vol. III., p. 920. There is no pretense that the court gave an instruction directing the jury to find the verdict returned by them. This case is, therefore, not within the rule laid down in *Perry v. Beard* (1 Mo. 637).

The words, "under the instructions of the court," being mere surplusage, the verdict was not invalidated thereby. *State ex rel. v. Knight*, 46 Mo. 83 ; *Ramsey v. Bader*, 48 Mo. 539 ; *Hancock v. Buckley*, *ante*, p. 459.

2. The polling of the jury was a right that either party could demand. *Hubbel v. Patterson*, 1 Mo. 392 ; *Norvell v. Deval*, 50 Mo. 272.

"To poll a jury is to require that each juror shall himself declare what is his verdict." 2 Bouvier's Law Dictionary.

"In practice the jury are not allowed to explain their reasons, *nor are counsel suffered to ask for an explanation as to the grounds of their verdict * * * .*" Chitty's Gen. Prac., Vol. III., p. 920. When in answer to the question, "Is this your verdict?" the juror said, "under the evidence it is not my verdict," the matter should have stopped then and there. It was improper to permit the plaintiff's attorney to enquire into the juror's reasons for making the answer, or for entertaining the opinion expressed in such answer. From the eminent character of the learned trial judge and of the attorney of plaintiff, we know that no harm was intended by such a

course, and it may even be that no harm was thereby done, but we cannot permit such conduct on the part of a trial court to become precedent. The only question permissible had been asked the juror. To that question he had given a plain and intelligible answer. And there the matter should have ended.

This case, under this point, is not touched by the case of *Rankin v. Harper* (23 Mo. 587). In that case, one juror, in answer to the question of the clerk, "Is this your verdict?" said, "It is, as far as it goes." This answer was held not to invalidate the verdict.

3. The verdict as returned by the jury was clearly invalid, because it did not contain the amount of the debt then due. *Cate's Adm'r v. Nickel*, 42 Mo. 171; *Burghart v. Brown*, 60 Mo. 24.

This fact was a material fact, and the jury alone could find it. It was improper for the court to find the amount so due and amend the verdict by inserting therein the amount so found. "It will not be claimed that the courts can substitute their findings for those of the juries." *Henley v. Arbuckle*, 13 Mo. 211. And even though the jury, when asked by the court as to whether the verdict as amended was their verdict, assented thereto, the matter was not thereby helped. The finding of every material fact the jury must make for themselves. No one can do it for them, any more with their consent than without it.

The *syllabus* of the case of *Henley v. Arbuckle, supra*, contained in the report and in the digests of our reports, is as follows: "A substantial omission in the verdict of a jury, may be supplied by the court, with their consent, so as to make it conform to their intention." But such *syllabus* is not supported or borne out by the opinion.

The quotation made above from the opinion in that case, is in no way modified or changed by the latter part of said opinion.

The action of the trial court, in this respect, was full of danger and must not be permitted to stand as a precedent in practice. It was erroneous, and must be corrected.

4. The verdict, as amended by the court and as recorded, was for one hundred and eighty-four dollars. At

ten per cent. compound interest, the verdict should have been for one hundred and sixty-eight dollars. For the difference of sixteen dollars the plaintiff has entered a *remittitur* in this court.

The note, described in the petition, was for one hundred dollars, payable six months after date, " with interest from date at the rate of *ten per cent. per annum.*" Judgment was asked for the said note and the balance of the interest if due.

As seen, the note introduced in evidence and attached to the petition, provided for said rate of interest compounded. Under these facts the plaintiff contends that he was entitled to compound interest, and the defendant insists that the plaintiff was entitled to only simple interest.

The defendant's position is correct. An instrument filed as an exhibit constitutes no part of the petition. *Bowling v. McFarland,* 38 Mo. 467, and cases cited. The note as pleaded called for only simple interest. *Stoner v. Evans et al.,* 38 Mo. 463. A judgment rendered for an amount of damages greater than that laid in the petition is erroneous and must be reversed. *Moore v. Dixon,* 50 Mo. 425, and cases cited. This last rule applies as well to the rate of interest claimed in the petition as to the amount of damages alleged in the petition to be a sum fixed and certain. Otherwise, on a petition to which the note in suit should be attached, calling for ten per cent. interest—claiming six per cent. interest, judgment could be had for ten instead of for six per cent. interest. When the damages are lumped in the petition, judgment cannot be rendered for a sum in excess of the amount named in the petition. This is certain and settled. On principle, it is equally as certain that a computation, for the purpose of ascertaining the amount of damages due the plaintiff, cannot be made on the basis of ten per cent. interest, when the petition asks that the computation be made on the basis of six per cent. interest.

The *remittitur* made by the plaintiff was not for a sufficient sum.

5. The evidence shows that plaintiff took possession

of the Stevenson property on December 6, 1877, and the evidence for defendant tends to show that the plaintiff took such possession under an agreement with Stevenson to apply the rents received by him to the payment of the two notes held by him against Stevenson, on the junior one of which the defendant was surety. No further or more particular appropriation of the rents than this was made by Stevenson, so far as shown by the evidence.

In March, 1881, Orr instituted his suit against plaintiff and others for possession of the Stevenson property.

There was evidence introduced for defendant tending to show that the plaintiff, prior to the institution of the Orr suit, had applied the rents received by him to the complete payment of one of the notes and to the very great reduction of the other.

What we shall say here will be said with reference to the above facts. For, if the plaintiff was not as to the Stevenson property, as supposed above, an assignee for said purpose under said agreement, but was, as testified by plaintiff, a trustee, holding said rents in trust for the exclusive benefit of Stevenson, the defendant's defence falls to the ground, being unsupported by the facts. And besides, plaintiff's instructions were asked and given, not upon plaintiff's evidence, but upon the theory that the property was assigned as aforesaid.

It is settled law "that if there are two demands against a person, the debtor has a right to direct to which demand the payment shall be applied. But if the debtor, at the time of payment does not direct the application, the creditor may at any time apply it to which demand he pleases." *Brady's Adm'r, v. Hill & Keene*, 1 Mo. 317; *The Mayor, etc., v. Patten et al.*, 4 Cranch. 317; 1 American Leading Cases (3d Ed.) 288, and cases cited; *McCune v. Belt*, 45 Mo. 181; *Gartner v. Kemper et al.*, 58 Mo. 570.

The plaintiff clearly had the right to apply the rents received by him upon either note according to his own election. Upon this point the circuit court did not err.

The question is, was the circuit court right in instructing the jury that the plaintiff, as a matter of course,

had the right to apply the rents received by him to the payment of the damages and costs adjudged against him in the Orr suit?

(1) If the plaintiff, prior to the institution of the Orr suit, did, in fact, apply the rents received by him upon the notes, he was bound by the application then made, and as made by him. *Mayor, etc., v. Patten et al.*, *supra*; *McCune v. Belt*, *supra*; 1 American Leading Cases, *supra*, pp. 289 and 290, and cases cited. The application by plaintiff can be shown by verbal declaration, or by an account rendered declaring the application. 1 American Leading Cases 290, and cases cited. In ignoring this rule the trial court erred.

(2) While it is true that the debtor, Stevenson, appropriated the rents of his property generally to the payment of the two notes, still the appropriation by him was special as to those notes so far as any other debt due, or which might thereafter become due from him to the plaintiff, was concerned; and the election had by plaintiff was only as to which of the two notes he would first pay with the rents received by him. The plaintiff could apply the rents on no other debt of Stevenson's than those notes.

If it be true that at the time of the institution of the Orr suit, the plaintiff had made no application of the rents, up to that time received by him, upon the notes or either of them, then the trial court should have made such application. The plaintiff cannot be permitted, by a failure to make the application called for by the contract of assignment to him of Stevenson's property, to defeat the very object of that assignment. Stevenson made no particular appropriation on either note. If the plaintiff, prior to the institution of the Orr suit, made no particular application of such rents on either note, it was the duty of the trial court to make such application of those rents received by plaintiff up to that time.

The court should have made such application first upon the note on which the defendant was not a surety. This should have been done under the rule laid down by Bliss, J., in the case of *McCune v. Belt*, *supra*, that

the application should first be made upon the debt first maturing. And this should have been done, also, under that rule, which is more satisfactory to us and better supported by reason and authority, that where the money has been voluntarily paid by the debtor, and no particular appropriation made by him, and no particular application made by the creditor, the court should first make the application upon the debt whose security is most precarious. *Field v. Holland*, 6 Cranch. 8–29, opinion by Chief Justice Marshall; 1 American Leading Cases 292, 296, and cases cited.

In making the application the court should have given effect to it, as if made at the time at which the rents became payments. 1 American Leading Cases 287. The rents became payments when their amount, in plaintiff's hands at any time, exceeded the amount expended by him in repairing the property, and a reasonable sum for his services in caring for the property up to said time.

If, after having so applied those rents upon that note, there had remained a balance, the court should have applied it on the other note, the note in suit.

For this reason, also, we think that the court erred in instructing the jury.

The judgment of the circuit court is reversed and the cause is remanded. All concur.