## J. H. McCORMICK, Respondent, v. S. M. HICKEY, Appellant.

### St. Louis Court of Appeals, January 18, 1887.

1. NEGOTIABLE INSTRUMENTS — DRAFTS — ACCEPTANCE — NOTES:— A draft, drawn through an agent, upon the drawer is equivalent to a promissory note and may be sued upon without having been accepted.

2. EVIDENCE—WITNESSES—INSANITY.—A mere excitable condition of mind which renders a party's appearance in court inadvisable, is not such insanity as will render the opposing party incompetent as a witness.

3. PRACTICE—APPELLATE—OBJECTIONS MUST BE SPECIFIC.—Appellate courts will not review objections to the introduction of evidence, unless such objections are specific.

4. ——— VERDICT.—A verdict which can be made definite and certain without resorting to facts *aliunde* is sufficiently certain to base a judgment upon.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Affirmed.*

JOHN R. CHRISTIAN, with JOHN JOHNSTON, for the appellant: It being shown and so decided by the court that Hickey was insane, the testimony of McCormick was clearly incompetent. This is certainly true as to his explanation of the receipt. *Angell v. Hester,* 64 Mo. 142; *Ring v. Jamison,* 66 Mo. 424. The only possible way for the defendant to be held on the draft is by ratification, and the acceptance on a separate paper; in which event the plaintiff must prove that he bought the draft in the faith of such acceptance, and that this suit was commenced within five years from the date of the acceptance. Rev. Stat., sect. 534; *Menefee v. Arnold,* 51 Mo. 536; *Carr v. Thompson,* 67 Mo. 472.

F. A. Wind, for the respondent: When an agent draws a bill upon his principal, by his authority, and for money or property obtained and used in his business, the drawer and drawee may be treated as in fact the same party, and held without demand or notice. Daniel on Negotiable Instruments, sects. 128, 129, 482 and cases cited; 1 Parsons on Notes and Bills, 63, 288; Story on Bills of Exchange, sect. 35; Story on Promissory Notes, p. 19, sect. 16; *Bank v. Evans*, 36 Texas, 592; *Raymond v. Mann*, 45 Texas, 301. The plaintiff was a competent witness. He was not one of the "original parties to the contract." Rev. Stat., sect. 4010, and cases cited; *Meier v. Thiemann*, 15 Mo. App. 310.

Thompson, J., delivered the opinion of the court.

This action was brought before a justice of the peace upon a draft drawn by W. Hickey upon Hickey & Bartlett, a partnership firm of which the defendant was a member, and assigned by the drawees to the plaintiff for value. On trial anew in the circuit court the plaintiff had a verdict and judgment, from which the defendant appeals.

I. At the trial the plaintiff was permitted to amend his statement so as to set up the transaction which resulted in the drawing of the draft. This ruling is objected to on the ground that the only statement before the justice being the draft, and this being a nullity, there was nothing to amend. There is nothing in the objection. The draft drawn by an agent on his principal in the course of business of the principal is tantamount to the promissory note of the principal, and the jury have found in answer to a special interrogatory that this draft was so drawn, and their verdict is supported by substantial evidence. *McClellan v. Reynolds*, 49 Mo. 312; *Smith v. Alexander*, 31 Mo. 193.

II. There is nothing in the objection, that the

amendment does not state a good cause of action, which requires any observation.

III.   It is objected that the court erred in permitting the plaintiff to testify, on the ground that the defendant was shown by the evidence to be insane, which fact, it is argued, rendered the plaintiff incompetent under the statute.   The statute admits parties to testify in their own behalf, but with the following proviso :   "That in actions where one. of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party shall not be admitted to testify in his own behalf."   Rev. Stat., sect. 4010.   We are clear that the defendant was not shown to be insane, within the meaning of this statute, by the evidence that was adduced for that purpose in this case.   This evidence consisted of the testimony of his family physician, to the effect that the defendant had a growth on the base of the cranium, which had been there for several years, and was growing worse all the time ; that it had now caused paralysis of one side ; that any excitement would aggravate the disease ; that to offer him as a witness in court might cause his immediate death ; that under any excitement his memory or statements could not be depended upon ; but that at home, surrounded by his family, he could converse intelligently enough.   Upon this evidence being given, the court at first ruled that the plaintiff could testify only as to the fact of the assignment of the draft to him, and then permitted him to testify to another matter.   The fact that the defendant may have a lesion of the brain which would render it imprudent for him to appear and undergo, in the character of a witness, the tension and excitement of a cross-examination, does not, we take it, disqualify the other party as a witness. If the rule were so, any party defendant, who is too ill from any cause to appear in court and testify as a witness in his own behalf, would be insane in the sense of the statute, and it would come to this, that the serious

illness of a party would disqualify the opposite party as a witness. It does not appear from the testimony of the defendant's family physician that his condition was such as to render it impossible, if necessary to his defence of the action, to take his deposition at his residence; and if his statements were not to be relied on under excitement, that would be a matter affecting his credibility and a subject of observation to the jury. A man whose memory is not so far impaired by a disease of the brain as to prevent him from conversing intelligently when surrounded by his family, can, we take it, furnish to his counsel such information as is necessary to his defence on an ordinary suit on a bill of exchange, and give a deposition on any point material to his defence, if they shall deem it necessary. We, therefore, hold that the court committed no error in allowing the plaintiff to testify.

It is proper to observe that if the insanity of the defendant had been properly established, the plaintiff would have been disqualified as a witness under the recent decision of the supreme court, notwithstanding he was not both a party to the suit and a party to the original transaction—that court having changed position upon this question since the decision in *Looker v. Davis* (47 Mo. 140), and having, in a recent manuscript opinion which is before us, taken the ground that it is sufficient that the witness is a party to the suit to disqualify him under the statute, although he may not have been a party to the original contract. *Meier v. Thiemann*, 90 Mo. ——. This decision reverses the decision of this court in *Meier v. Thieman* (15 Mo. App. 307).

IV. The court admitted, against the objection of the defendant, a letter written by Hickey & Bartlett, on whom the draft was drawn, by W. Hickey, to the Cairo Coal Company, in whose favor the draft was drawn, dated May 18, 1875, which was five days after the draft, saying: "Your draft was presented to us to-day, which we did not honor, as we have been making some heavy

payments lately and it is impossible to collect anything. We will pay it in a few days. Trusting it will not inconvenience you in any manner, we remain, yours respectfully, Hickey & Bartlett. H.'' This was objected to, but the grounds of the objection were not stated. For this reason alone the objection is not available here

V. Another objection is that the court erred in admitting in evidence a letter dated September 3, 1865, by Hickey & Bartlett to Messrs. Halliday & Bros., of Cairo, apologizing for not settling a bill of coal, which, from the terms of the letter, appears to have been ordered by the Steamer Petrel, for coal for which this draft was given, and which would seem to refer to this same coal. It is sufficient to say that the record does not show that any objection at all was made to the introduction of this letter.

VI. The defendant, for the purpose of proving payment of the draft sued on, put in evidence the following receipt, dated July 26, 1882 : '' Received of S. M. Hickey seventy-five dollars in full of all demands against S. M. Hickey and S. M. Hickey & Co., to date ($75.00) including ice sales on joint account. J. H. McCormick.'' In rebuttal the plaintiff testified that this receipt was not intended to include the claim in controversy, but was in settlement of other claims spoken of and discussed between the plaintiff and the defendant at the time and this claim was not mentioned. The court, among other things, charged the jury, of its own motion, that the evidence of payment set up by this receipt must be established by the defendant by a preponderance of evidence, and that a preponderance of evidence meant that the evidence for the defendant should, in the judgment of the jury, appear to preponderate in respect of its credibility in favor of the defendant, etc. We see no error in this. The defence of payment is an affirmative defence, and, like any other affirmative matter, must be established by a preponder-

ance of evidence, in order to warrant the jury in finding in its favor.

VII.  A general objection is made against the instructions; but, on examining and comparing them, we are satisfied that the case was fairly put to the jury.

VIII.  There is nothing whatever in so much of the defendant's argument as seeks to invoke the statute of limitations of five years.  We have already said that the instrument sued on was in legal effect the promissory note of Hickey & Bartlett, having been drawn on them, as the jury have found, by their agent, without any formal written acceptance by them.  The act of their agent in drawing it, in settlement of a quantity of coal furnished by the drawees to their steamer, was their act.  It constitutes a written evidence of the indebtedness by them, and the statute of limitations applicable to such an instrument is the statute of ten years.  The cases cited by the defendant in support of this contention have no application.

IX.  The verdict of the jury, aside from answering the special interrogatories submitted to them, was in the following form:  "We, the jury, in the case of *McCormick v. Hickey*, find a verdict in favor of J. H. McCormick, the plaintiff, to recover the full amount of draft ($228) two hundred and twenty-eight dollars, with interest dating from May 18, 1875, at six per cent. per annum.  Daniel Wheatley, Foreman."  May 18, 1875, was the date of the letter of Hickey & Bartlett to the drawees of the draft, apologizing for its non-payment and promising to pay it in a few days, which letter was, as already stated, written five days later than the date of the draft.  Upon this verdict the judgment, as originally entered, was for a sum in excess of the amount recoverable, determined by a correct computation of the interest; and the court set aside the judgment and allowed a *remittitur* of the excess to be entered, and then rendered a judgment on the verdict for the correct amount.  In this there was no error.  A

verdict, like any other instrument, is subject to the maxim that, that is sufficiently certain which can be made certain. Where the amount of the verdict can be ascertained by an ordinary computation of interest, it is sufficiently certain to support a judgment and the court can direct the clerk to make the computation, or the judge can make it himself. The cases of *Cates v. Nickell* (42 Mo. 169), and *Burghart v. Brown* (60 Mo. 24), have no application ; because in those cases the jury did not return any amount at all in their finding, but simply rendered a general verdict, finding the issues for the plaintiff. The case of *Poulson v. Collier* (18 Mo. App. 583, 600, 604), decided by the Kansas City Court of Appeals, was not like this case. There, the action was upon a promissory note, and the jury returned the following verdict: "We, the jury, find for the plaintiff the amount of the note sued on, under the instructions of the court. John R. Green, Foreman." The court held, on the authority of the two cases just cited, that this was not a good verdict. The trial court changed the verdict by interlineation, so as to make it read: "We the jury find for the plaintiff the sum of $184, the amount of the note sued on, under the instructions of the court. John R. Green, Foreman." The Kansas City Court of Appeals held that the trial court, in so doing, substituted its findings as to the amount for the finding which should have been made by the jury, and that this irregularity was not cured by the action of the court in asking the jury whether the verdict as amended was their verdict, to which they assented. We are not prepared to say whether or not, in a similar case, we should go as far as the Kansas City Court of Appeals went in that case. It is sufficient to say that that case is no authority for the position which the defendant takes in this case. Here the jury did find the amount for which the plaintiff was entitled to recover judgment, in terms which could be made, by a simple calculation, absolutely certain ; and

upon the clearest grounds, sanctioned by the practice of courts of the common law for two hundred years, the power to amend the verdict in such a matter exists in the trial court. *Acton v. Dooley*, 16 Mo. App. 441, and cases cited.

The amount of the judgment, as entered after the *remittitur*, was the amount which the jury intended to return as their verdict, and it was the amount which the plaintiff was entitled to recover, if he was entitled to recover anything. If there was any irregularity in the manner in which the verdict was arrived at, it is subject to the observation that it is, at most, error without prejudice to the party complaining. In this respect, also, the case is not like the case of *Poulson v. Collier*, where there was a controversy as to the amount for which the plaintiff was entitled to recover, growing out of a difference of opinion as to the interest which was allowable.

The judgment will be affirmed. It is so ordered. All the judges concur.