## HELLER v. THE PEOPLE.

1. PRACTICE IN CRIMINAL CASES—IMPROPER CONDUCT OF PROSECUTOR.
The questions put by the prosecutor to witnesses and remarks and insinuations made by him in the course of the trial, as stated in the opinion, although objections thereto by the defendant were sustained by the trial court, constituted error. It was not cured by sustaining the objections and admonishing the prosecutor to desist from further comments of the like nature.

2. JURY TRIALS—MISCONDUCT OF BAILIFF.
The officer in charge of a jury in a criminal case allowed the jury to separate, permitted intoxicants in their room, engaged in altercations with members of the jury, and endeavored by argument and denunciations to procure a verdict of guilty. *Held*, the verdict should have been set aside.

3. APPELLATE PRACTICE.
Where a matter is presented to the court below upon affidavits, this court is as well qualified as it to determine the weight to be attached to the affidavits.

4. PRACTICE—AFFIDAVITS OF JURORS.
While affidavits of members of a jury are not receivable to show the jury's misconduct, they may be received to show the misconduct of the bailiff and other third parties.

*Error to the Court of Appeals.*

PLAINTIFF in error was indicted at the January, A. D. 1890, term of the district court of Arapahoe county for the crime of embezzlement. The indictment contains four counts. In the first count, this being the one upon which the defendant was convicted and sentenced, he is charged with being the financial agent of one Caroline Spindler for the purpose, among other things, of borrowing and loaning money, and that while such financial agent, and by the virtue of his agency and the confidential relation existing between him and Caroline Spindler, he received from her and took into his charge and possession a certain promissory note of the value of twelve hundred (1200) dollars, and did then and there contrary to the confidence and trust in him reposed by his said

principal, as aforesaid, withdraw himself from his principal and go away with said note, and did then and there unlawfully and feloniously convert the same to his own use with the felonious intent to steal the same, etc.

It is unnecessary to set forth the remaining counts in the indictment. Upon this indictment a trial was first had at the September, A. D. 1890, term of the district court of Arapahoe county. As a result of this trial, the jury disagreed. The defendant was again put upon trial at the January, A. D. 1891, term of the court. This second trial resulted in a general verdict of guilty upon the three counts of the indictment. The defendant, however, was sentenced only upon the first count. To reverse the judgment of the district court the case was brought into the court of appeals upon writ of error, where, however, the judgment of the district court was affirmed. See *Heller v. The People*, 2 Colo. App. 459. To reverse the judgment of the court of appeals a writ of error was sued out from this court. After an examination of the record, this writ of error was made a *supersedeas*.

At the trial the defendant offered himself as a witness in his own behalf. On his cross-examination counsel for the state propounded this question to him: "Now, Mr. Heller, were you not convicted last month before Judge Decker?" The defendant's attorney: "The jury disagreed." Counsel for the state: "He was standing in hock here three or four days." This language of the prosecuting attorney was objected to, the objection sustained, and the remarks withdrawn from the consideration of the jury. At another time while this witness was being examined, counsel for the state said to him: "I desire now to caution *this man Heller* to answer the questions and not interject stuff that is not testimony." Again, on the cross-examination of defendant, the prosecuting attorney addressed him as Mr. Spindler. The defendant answered, "Heller is my name," to which the prosecuting attorney responded, "*I beg your pardon for calling you by the name of a gentleman.*" At another time

this question was propounded to him: "After you paid the note you had Mr. Tesch bring attachment proceedings against the Windsor Exchange for the purpose of freezing Mr. Spindler out, didn't you?" And when an objection to this question was sustained, the private counsel employed to assist in the prosecution made this statement in the presence of the jury: "We propose to show borrowed on this $556, $300 from Mr. Tesch, and before the matter had ever been assigned back, we propose to prove by this man that he used Tesch's name without Tesch's consent, and that, taking advantage of the situation of affairs, we propose to prove by this witness that he then had an attachment levied upon the Windsor Exchange, so as to make this Anheuser Busch Brewing Association mortgage fall due, thereby destroying the $1,700, while he was agent for Spindler, that Spindler had upon that, and we propose to go further and follow it up by other testimony for the purpose of explaining that item there."

Isadore Heller, a son of the defendant, was offered as a witness and gave important evidence for the defendant. When another witness was upon the stand it was attempted to be shown by this witness that the defendant's son had failed in business in Leadville. (Objected to by the defendant.)

"Q. You were there when he failed, wasn't you?

"(Objected to, as immaterial and incompetent. Objection overruled, and the defendant excepted.)

"Q. Now, do you know of his failure?

"(We object for the reason last stated, regarding all of this evidence regarding Isadore Heller. Objection overruled, and the defendant excepted).

"A. I don't know anything about Mr. Heller's failure. I was not there at the time he failed."

Misconduct on the part of the bailiffs in charge of the jury, and misconduct of some of the jurors as well, was called to the attention of the trial court by affidavits filed in support

of a motion for a new trial. The misconduct alleged in these affidavits consisted in the following acts:

*First.* Allowing the jury to separate in violation of the instructions of the court, and permitting jurors to enter a saloon and drink at a public bar.

*Second.* The introduction of bottles of whiskey in the jury room for the use of the jurors.

*Third.* Talking with jurors for the purpose of influencing their verdict against the defendant.

*Fourth.* Taking a juror into a side room and there engaging in a personal quarrel with him, using violent and abusive language to the juror, so that other members of the jury were obliged to interfere to prevent a breach of the peace.

*Fifth.* Calling attention to a supposed natural infirmity of one of defendant's counsel, and saying to the jury that he had no case.

One of the affidavits filed in support of a motion for a new trial is as follows:

"STATE OF COLORADO, ⎱ ss.
"COUNTY OF ARAPAHOE, ⎰

" Thompson Dougan, being first duly sworn, on oath says, that he was a member of the jury in the above entitled cause at the present term of this court. That after the jury was sworn and impaneled to try the issues in said cause, and on several occasions, bottles of whiskey were brought into the jury room and drank by the jury, and on one occasion every juror partook of said whiskey, that on one occasion a juror remarked to the colored bailiff in charge of said jury, ' How would it do to send down a pitcher or a jug for whiskey? ' to which the said bailiff replied, ' That is your own business, I am supposed to be dead, I am in the back ground.'

" That said jury was fed at Mrs. Given's restaurant near the St. James Hotel, on Curtis street, during their entire service, and frequently when so at meals the jurors would separate and go into the bar opening out of the dining room and drink alcoholic drinks.

" That on one occasion when sitting at the table and waiting for dinner, Mr. Stone, the bailiff in charge of the jury, remarked: ' Gentlemen, don't Taylor make you sick.   Just wait until he gets started.   He will whine and cry around and can't present a case.   He has no ability as a lawyer.   He reads in a monotone.   That old fellow Heller has no case; that he has been tried twice and found guilty.   Taylor before he gets through with it will get down and cry, and you will get sick of him.   Just wait, when Ward gets up, he can present a case like an attorney and you can see through it.'

" That the above and like remarks were made not only at the table, but privately by said bailiff to affiant when walking along on the street.

" That the colored bailiff on Saturday evening and on Sunday shaved the different members of the jury Saturday night and Sunday morning, some in the room and some he would take into the hall away from the rest of the jury in doing so.

" That said bailiff took said affiant to task for his words and opinions in discussing the case in the jury room and went so far as to tell affiant he lied in his statements in relation thereto, and created so much disturbance that other jurors interfered to avoid further trouble.

" That the conduct of the said bailiff, Stone, and the said colored bailiff became so notorious and offensive in making remarks and statements and interfering with the deliberations of the jury, while said case was in progress, in order to prejudice the minds of the jury, in such frequency and to such an extent that affiant became disgusted and threatened to report the matter to the court in regard to their said conduct.   That said colored bailiff becoming aware of affiant's intention of reporting said matters and things to the court, interfered and tried to raise a prejudice between the members of the jury, and came to affiant and said, if affiant did so he would be sorry for it and would never do it again.

"THOMPSON DOUGAN."

Affidavits of like tenor and effect were procured from two

other jurors and placed on file, and quite a number of counter affidavits were filed on the part of the state. The motion was overruled and the prisoner sentenced upon the first count of the indictment.

Messrs. OSBORNE & TAYLOR, Mr. W. S. DECKER and Mr. T. J. O'DONNELL, for plaintiff in error.

THE ATTORNEY GENERAL, for the People.

CHIEF JUSTICE HAYT delivered the opinion of the court.

As there are seventy errors assigned to the rulings of the district court, nearly all of which assignments of error are absolutely without merit and are abandoned in this court, it should not be a matter of surprise that the court of appeals in its opinion as filed gave but slight consideration to matters to which our attention has been particularly invited, and which we think necessitate a reversal of the judgment of both the court of appeals and the district court.

In so far as the errors assigned are discussed at length by the court of appeals, we are entirely satisfied with that discussion, and shall not attempt to review such errors. Our consideration will be given entirely to such errors as relate to the misconduct of counsel for the state during the trial, and to the misconduct of the bailiffs in charge of the jury. Alluding to the misconduct of counsel representing the state, the court of appeals uses this language :

" We admit that the remarks incorporated into the record as having been uttered by the prosecuting attorney were highly improper and unwarranted, but in the face of the fact that the record shows that objections were interposed by counsel for defendant, and that those objections were sustained and the remarks eliminated, and counsel cautioned by the court to refrain from further comments of that nature, that the defendant secured through the court a correction of this misconduct, and we are warranted in assuming that,

in view of the action of the court, that the jury were not influenced or prejudiced against the defendant by the course pursued by counsel for the prosecution."

We cannot agree with that court in the conclusion that the error was corrected by the district court, or that the defendant's case was not prejudiced by the improper conduct alluded to; for while it is true that as often as appealed to the court sustained the defendant's objection to the unwarranted statements and improper insinuations of the district attorney, it is equally true that the action of the court was had in such a manner as to have no effect upon the district attorney, who persisted in the improper conduct the same as before.

The court does not seem to have made any attempt to punish counsel in any way for these improprieties or to have reprimanded him for his unprofessional conduct. In this connection the language of this court in the case of *Smith v. The People*, 8 Colo. 457, is directly in point: " The criticism on the action of the court is that the judge failed to assert and maintain the authority and dignity of the court, by reason whereof a prisoner upon trial was prejudiced. The law places at the command of all judicial tribunals ample power and means to enforce obedience to their lawful orders in such cases, by the way of fines, and, if necessary, imprisonment. It is the duty of courts to require their proceedings to be conducted according to the rules of law, and to protect the rights of litigants. That the proceedings in this instance were defective in the essentials mentioned is fully shown by the record. We are further of opinion that the errors complained of were not cured, for which reasons the judgment must be reversed and the cause remanded."

So in this case we think that the covert insinuations as well as the direct attacks made by the district attorney upon the defendant were well calculated to prejudice the jury against him. Added to this we have the offer on the part of the assistant district attorney to prove a crime against the defendant other than the one for which he was upon trial. An objection to this offer of proof was properly sustained by

VOL. XXII—2

the trial court.   The offer, however, becomes important for the purpose of showing the extent to which the zeal of counsel carried them in this prosecution.

In the light of this record we cannot say that the improper conduct of the district attorney did not have much to do in influencing the jury against the defendant.   This undoubtedly was the effect desired, but whether it had such effect or not it is unnecessary to determine.   It is sufficient for us to know that it might have been the means of procuring a verdict of guilty, and for this misconduct of counsel alone the defendant should be awarded a new trial.

The alleged misconduct of the bailiffs in charge of the jury is, however, a matter that we cannot overlook.   These officers, in the disregard of their sworn duty and in violation of the instructions of the court, allowed the jury to separate, permitted intoxicants in the jury room, and engaged in conversations with members of the jury, which resulted in an altercation, so that a breach of the peace was narrowly averted.   These are matters about which there is no conflict upon the affidavits filed.   Added to this we have the affidavits of three jurors to the effect that one of the bailiffs endeavored by argument and denunciation to procure a verdict of guilty ; this officer going so far as to call attention to some supposed natural defect in one of the attorneys for the defense.   It may be said, however, that these matters last mentioned are denied.   By whom?   *First*, by the officer charged with the improper conduct; *second*, by the negative statement of other jurors to the effect that they heard nothing of the kind.

This is a matter that was presented to the district court entirely upon affidavits filed, and not upon oral testimony, and for this reason this court is as well qualified to judge as to the weight that should be attached to the several affidavits as the court below, and taking into consideration the fact that the misconduct of the bailiffs in other respects is admitted, and that these additional irregularities are made to appear by the positive affidavits of three of the jurors, we

are of the opinion that the further misconduct of the bailiffs is established by the weight of evidence.

We cannot consider the alleged misconduct of the jury, for the reason that the same is only brought to the attention of the court by the affidavits of members of the jury ; and it is well settled that such affidavits cannot be received for the purpose of showing misconduct on the part of the jury, although, by the weight of modern authority, the affidavits of jurors may be received for the purpose of showing misconduct on the part of bailiffs and other third parties. Proffatt on Jury Trial, sec. 408 ; Thompson & Herman on Juries, sec. 449.

The defendant had been transacting business with and for Caroline Spindler for a long time prior to the transaction which formed the basis of this information. He claimed that she, being indebted to him at the time, requested him to sell or hypothecate the $1,200 note, and from the proceeds thereof to pay this indebtedness. This Mrs. Spindler denies. The evidence is very conflicting. It was the province of the jury to decide upon this conflict, and what influence the improper conduct of the officers of the court, the district attorney, and the bailiffs, may have had upon the jury, no human being can say with certainty ; but of one thing we feel there is no doubt, and that is that the defendant did not have a fair trial, and for this reason the judgment will be reversed.

*Reversed.*