28   23
18a  400

[No. 4193.]

HERREN v. THE PEOPLE.

1.  HOMICIDE—EVIDENCE—RES GESTÆ.

In a prosecution for murder where it was claimed that deceased died from a blow on the head inflicted the day preceding her death by defendant, her husband, it was error to admit as a part of the *res gestæ* a statement by deceased that defendant had knocked her down and nearly knocked her cold, made in answer to inquiries as to what was the matter, at a mill where she had gone about 200 feet from her home where the blow was alleged to have been inflicted, and about two hours after the time it was supposed to have been inflicted and where in going to the mill she passed by two groups of people, some of whom she knew, without speaking of the matter and where there was an entire absence of evidence as to the time when, if ever, the stroke was given.

2.  PRACTICE IN CRIMINAL CASES — EVIDENCE—IMPROPER ARGUMENT OF COUNSEL.

In a prosecution of defendant for the alleged murder of his wife, a brother-in-law of defendant, a witness for the prosecution, in response to a question which called for no such answer, got before the jury a statement that defendant had killed his wife's sister, wife of witness, which statement was stricken from the evidence, but in argument after defendant's counsel had referred to the prejudice of said witness the prosecuting attorney in reply in his closing argument referred to the matter in violent manner stating that the witness had good cause for his prejudice and if permitted to do so he would be glad to tell the jury the cause and challenged defendant's counsel to allow him to tell the jury why the witness was prejudiced. Defendant's counsel promptly objected to the language of the prosecuting attorney, but the court refused to sustain the objection and in the hearing of the jury stated that the remarks of the prosecuting attorney were justified. *Held*, that the conduct of the prosecuting attorney was a flagrant violation of defendant's rights and that the trial court should have severely reprimanded the attorney and should have set aside a verdict of conviction because of such conduct.

3. PRACTICE IN CRIMINAL CASES—EVIDENCE OF PREVIOUS OFFENSE —INSTRUCTIONS.

Where a defendant testifies in his own behalf and evidence of conviction of previous crime is admitted as tending to affect his credibility, it is the duty of the court to instruct the jury for what purpose such evidence is admitted and that it must be considered for no other purpose.

4. HOMICIDE—EVIDENCE—CAUSE OF DEATH.

In a prosecution for murder where it was claimed that deceased died from a blow inflicted by defendant, and the two surgeons who performed an autopsy differed in their testimony as to the cause of death it was error to refuse to permit the physician who testified for defendant to answer the interogatory as to whether or not he found any evidence of violence having been applied to deceased, the other physician having given evidence similar for the people.

5. HOMICIDE—EVIDENCE—INSUFFICIENT.

In a prosecution of defendant for the murder of his wife, a son testified that defendant and deceased were quarreling when he left for school the morning preceding death but that defendant did not strike deceased or use any physical violence while he was present. About two hours later deceased left her tent and went about 200 feet to a mill where in answer to inquiries she said defendant knocked her down. In going to the mill she passed immediately by a group of people, some of whom she knew, without speaking to them. While at the mill she seemed in a dazed condition and held one hand on her head and the other on her breast. She made no request to have a physician or officer called. After staying at the mill about ten minutes she returned to her tent and shortly after took a street car for another part of the city and went to the house of her daughter where she remained during the night and part of the next day but made no complaint of any injury. She sent for an express wagon and without assistance walked down a flight of stairs and out to the street and got into the express wagon. She inquired of the driver the cost of removing a trunk from her tent to her daughter's house and on the way to her tent she fell forward and died. The physicians who performed the autopsy disagreed as to the cause of death. *Held*, insufficient to prove the *corpus delicti.*

*Error to the District Court of Arapahoe County.*

MR. R. D. REES, for plaintiff in Error.

Mr. D. M. CAPMBELL, attorney general MR. CALVIN E.

REED, and MR. DAN B. CAREY, assistants attorney general for the people.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The defendant was tried for the murder of his wife, convicted of voluntary manslaughter, and sentenced to the penitentiary for a term of eight years at hard labor. The information was filed February 10, 1899, and the defendant was at once arrested, and up to the time of trial incarcerated in the county jail. He was not able to employ counsel, and the court, under the authority of our statute, appointed an attorney to defend him.

The evidence tends to show that Mrs. Herren's death occurred in the forenoon of January 23, 1899. The theory of the prosecution was that it resulted from a blow on the head inflicted by her husband on the preceding day and soon after eight o'clock in the forenoon. Defendant and deceased were married in the state of Indiana in 1885. The wife had been married twice before, and had five children by the former husbands. Defendant was an industrious laboring man. He and his wife had difficulties occasionally, which apparently were caused partly by the misconduct of her children by the former marriages, or by reason of their interference with the domestic relations of the husband and wife, and in part by her ill health, or intemperate habits, and by his ill nature. That there was fault of both husband and wife seems clear.

In 1886 they came from Indianna to Colorado, and were soon followed by Mrs. Hughes, daughter of deceased by a former   husbanher sister Mrs. Prentice, and the latter's husband. Disturbances between defendant and his wife again broke out, and continued intermittently until the time of her death. She was not a woman of good health or strong physique, somewhat addicted to the use of intoxicating

liquors, and particularly at menstruation acted strangely, and as though she were mentally unbalanced.

The son, about twelve years of age, testified that on the morning preceding the death of his mother, at the breakfast table, about eight o'clock, his father and mother were engaged in a war of words in which the former used obscene and profane language, and that this continued up to the time when witness left for school, shortly after eight o'clock. The father did not, while the boy was at home, strike the mother, or use any force or physical violence. The boy also testifies that he never saw an act of that sort.

About fifteen minutes after ten o'clock the deceased appeared at the engine room of a power house one or two hundred feet from her residence, and there spoke to Mr. Wilson, a stationary engineer, and when addressed, he asked her what was the matter, to which as the witness Wilson testifies, she replied: "He knocked me down, and I thought he knocked me cold"; and as testified to by Mr. Pike, who was present: "Herren knocked me down and most knocked me cold." These witnesses were, against defendant's objections, permitted to testify to this declaration. Nothing was said about the time when she was struck. They also testified that Mrs. Herren then seemed to be in a dazed condition, and that during the conversation with her, which was brief, she held one hand upon her head and the other upon her breast. She did not complain of pain, or that she apprehended anything serious from what occurred. No request was made to call a physician or for the officers of the law, and after sitting in the room with the engineer for ten minutes, she left and went back to her tent, and soon after took a street car for East Denver, and this was the last they saw of her during her life.

In passing from the tent in which she was living to the room where the engineer was, deceased went by a drug store which directly faced her tent, in which there were people at

the time she passed it with whom she was as well acquainted as with Wilson, and she also went in front of a waiting room of the street railway company in which, also, there were persons at the time; and she made no outcry and spoke to none of them of the blow she received.

It seems that she went to the house of her daughter in East Denver, made no complaint whatever of any injury, remained there during that night, and during the forenoon of the following day sent for an express wagon, and when it approached the house where she was, walked unaided down a flight of stairs and out to the street, and without assistance got into the express wagon on the seat beside the driver. They started towards her tent near Elitch's Gardens, and on the way she remarked to the driver that it was cool, and asked him his charges for going to her house and bringing back to the residence of her daughter a trunk and some articles of household furniture, to which the driver replied that she would see the cost on a slip of paper which he had handed her, and which she had put into her pocketbook. In the act of opening the purse the driver observed that she suddenly leaned forward and was about to fall from her seat, whereupon he took hold of her with one of his hands, restrained her from falling, and hastily drove to a mill near by for assistance, but, before it came, Mrs. Herren was dead.

The witness Prentice, husband of the deceased sister of Mrs. Herren, in reply to a question by the district attorney which did not call for any such answer, got before the jury the statement that the defendant had previously killed his wife's sister, wife of the witness. This testimony was stricken out by the court, and the same testimony was elicited from some of the other witnesses, which also was stricken out.

It is urged that the testimony in the case is entirely insufficient to sustain the verdict of guilty. Numerous errors are alleged, some of which, considered but not passed on, are as fatal as those determined, but as they will not likely occur at

another trial, we pass them by.

It is impossible for a judge of an appellate court to obtain from the reading of the record that complete knowledge of a cause, or to estimate the strength of the evidence so accurately, as the judge who presides at the trial, hears all the testimony, and observes the witnesses as they testify on the stand. In the nature of things, that elusive atmosphere which attends every trial is lost to one who must depend upon the written record of its proceedings. Notwithstanding this, and conceding that we have not the same facilities in this respect possessed by the trial judge, we are convinced that the defendant did not have a fair trial in the particulars now given.

1. The testimony of the witnesses Wilson and Pike was admitted by the trial court upon the theory that it was a part of the *res gestœ*. The ruling was palpably wrong. The mere statement of the case, as above made, shows it. The purported declarations were neither spontaneous nor voluntary. They were in response to questions asked, and were clearly narrative of a past event, in no sense explanatory of the principal fact, or connected with it. Not only was there ample time for reflection and meditation after the blow was inflicted, if we are to presume that it was received two hours before, but there is an entire absence of evidence as to the time when, if ever, the stroke was given.

*Mayes v. State,* 64 Miss. 329; *Graves v. People,* 18 Colo. 170; *Pueblo Building Co. v. Klein,* 5 Colo. App. 348, 355; *Kendrick v. State,* 55 Miss. 436, 449; *Binns v. State,* 57 Ind. 46, 50; *McBride v. People,* 5 Colo. App. 91, 98; *Lander v. People,* 104 Ills. 248; *U. S. v. King,* 34 Fed. Rep. 302, 314; *Reg. v. Bedingfield,* 14 Cox's Crim. Cases, 341.

2. It may be that the district attorney was not responsible for the injection into the record by the witnesses of the alleged fact that defendant had killed Mrs. Prentice, and that

at the time this testimony came out the court did all in its power to remove its impression from the minds of the jury. We would not refer to it now were it not for something that occurred during the closing argument of the district attorney to the jury.

It seems that defendant's counsel, in his address to the jury, commented, and rightfully too, upon the evident prejudice which the witness Prentice had against the defendant. We say rightfully, because a reading of his testimony satisfies us that he had an intense feeling against defendant, and that he availed himself of every opportunity, by statements not called for by the questions propounded, to get before the jury hurtful and improper testimony. When the deputy district attorney came to his closing argument, in referring to the language which defendant's counsel had used in relation to the witness Prentice, he clenched his fist, and approaching counsel, who was sitting at the side of the defendant near the jury, said in a loud tone of voice and with intense emphasis and expression and in a violent manner: "You" (meaning the defendant's counsel) "called the attention of the jury to the witness Prentice and said he was actuated by malice and revenge, but you did not tell them why he entertained such feelings towards this defendant. Now, if you want me to, I'll tell the jury why he has those feelings of bitterness and hatred towards this man" (shaking his fist at the defendant). "I challenge you here and now to allow me to tell this jury why Prentice spoke as he did upon the witness stand. He has good reasons for his malice and his revenge and I shall be only too glad to be permitted to tell the jury what is the occasion of it, if you will only consent to my doing so at this time."

Counsel for defendant immediately objected to such language of the district attorney, but the court, instead of sustaining the objection, addressing defendant's counsel, said in the presence and hearing of the jury: "Your objection is

not sustained. Mr. Rees, you are out of place. You are wrong. He is right. You commented on the bias and malice of the witness Prentice, and Mr. Elliott had a right to make the remarks he did. He is simply answering what you said."

It would be difficult to conceive of a more flagrant injustice to a prisoner than this. The court should have severely reprimanded the district attorney for this outburst, and should have set aside the verdict, because such conduct not only might have influenced, but as we think in this case did unduly influence, the jury in their finding. It is the duty of a trial court always to maintain the dignity and uphold the authority of the court, and by reason of its failure to do so in this case, the prisoner upon trial was certainly prejudiced. *Smith v. People*, 8 Colo. 457; *Heller v. People*, 22 Colo. 11.

3.  There was testimony tending to show that defendant had been convicted of, or tried for, some previous crime, and under our statute this testimony was competent as affecting his credibility, since he was sworn in his own behalf. When the court admits testimony of this character, it should, on request, either at the time of its reception or by instructions to the jury at the close of the trial, clearly advise them for what purpose they may consider it. The court did not do so in this case. Its admission comes within one exception to the general rule that evidence of a crime other than that for which the defendant is charged is inadmissible. The statute permits its reception only as affecting credibility, and it was the duty of the court, upon request, so to instruct the jury, and to advise them that they must consider it for that purpose and for no other.

4.  In view of the fact that the two surgeons who performed the autopsy differed not only in their conclusion as to the cause of death but also in other matters, the court

should have allowed Dr. Smythe (defendant's witness) to answer the interrogatory of defendant's counsel as to whether or not he found any evidence of violence having been applied to the head of defendant. Similar testimony was given by the witness Dr. Tennant in behalf of the people, and we certainly think that this question to Dr. Smythe should have been allowed.

5. There was not sufficient proof of the *corpus delicti*, by competent and legitimate evidence.

Thoroughly satisfied, as we are, that defendant did not have a right trial, for the foregoing among other reasons, the judgment should be reversed, and the cause remanded, and it is so ordered.

*Reversed.*