## THE STATE v. JAMES HUBBS, Appellant.

Division Two, June 8, 1922.

1. **ASSAULT WITH INTENT TO KILL: Without Malice Afore-thought: Sufficient Evidence.** It is the exclusive province of the jury to weigh the evidence and to determine what credit should be given to the testimony of the various witnesses; and where there is substantial evidence to support a verdict of guilty if be-

State v. Hubbs.

lieved, although there is much testimony to the contrary, a verdict finding defendant guilty of felonious assault without malice will be upheld on appeal.

2. **FORM OF VERDICT: Disagreement on Punishment: Assessment by Court.** The trial court was fully authorized by Section 4048, Revised Statutes 1919, to receive and accept the verdict of the jury that "we, the jury, find the defendant, Jas. Hubbs, guilty of felonious assault without malice, and cannot agree as to punishment;" and defendant's contention that it should have been rejected because the jury failed to assess the punishment is without merit.

3. ———: ———: ———: **Polling Jury: Waiver by Defendant.** Where defendant's counsel was present in court when a verdict finding him guilty but assessing no punishment, was returned, and expressly waived the polling of the jury, and made no objection to the court's receiving the verdict and discharging the jury until after the court had imposed upon defendant a sentence of imprisonment for two years in the penitentiary, he should not be permitted thereafter to question the action of the court in so doing.

4. ———: ———: **Polling Jury After Discharge.** Where defendant's counsel expressly waived the polling of the jury at the time of the return of the verdict, he is not entitled to have the jury polled after the verdict had been received and the jury discharged and after sentence had been pronounced by the court.

5. ———: ———: **Extent of Poll.** In polling the jury defendant is limited to inquiry touching the fact of the concurrence of the jurors in the verdict as returned, and it is not proper to inquire into the reasons actuating the respective jurors in so concurring.

6. ———: ———: **Request for Information: Oral Instruction.** Where the jury, after deliberating upon their verdict for about two hours, informed the court, upon its inquiry of them concerning the state of their deliberations, that the guilt of defendant had been agreed upon, but that they could not agree as to the punishment, and they then inquired of the court whether that sort of verdict could be returned by them, it was not error for the court to orally inform them that they could return a verdict in such form.

7. **INDICTMENT: Assault With Intent to Kill: Conviction of Lesser Offense.** The indictment in this case properly charged every element of the offense of assault with intent to kill with malice aforethought and with a deadly weapon, and was in the form repeatedly approved, and was sufficient to authorize conviction of a lesser offense necessarily included in it, and defendant's motion in arrest of judgment was, therefore, properly overruled.

294 Mo.—15

Appeal from Ozark Circuit Court.—*Hon. Fred Stewart,* Judge.

AFFIRMED.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) The indictment charges every element of the offense of assault with malice aforethought in the language of the statute, and is in approved form. Sec. 3262, R. S. 1919; Kelley's Criminal Law, p. 504; State v. Baird, 271 Mo. 13; State v. Doyle, 107 Mo. 40; State v. Bond, 191 Mo. 565. (2) Where a defendant does not object to the giving of the instructions and save an exception to the action of the court in giving them, he cannot have a new trial for any error therein. State v. Isaacs, 187 S. W. 22; State v. Smith, 190 S. W. 289; State v. Eddy, 199 S. W. 188. (3) Where the jury find a verdict of guilty and fail to agree on the punishment to be inflicted the court shall assess and declare the punishment. Sec. 4048, R. S. 1919; State v. Emery, 76 Mo. 350; State v. Robb, 90 Mo. 35; State v. Rollins, 226 Mo. 538; State v. McDonough, 232 Mo. 228; State v. Gilbreath, 130 Mo. 504; Fooxe v. State, 7 Mo. 502; Norvell v. Deval, 50 Mo. 273. (4) Vague declarations in the motion for new trial that the verdict was against the law and the evidence and that the defendant did not have a fair trial raise no point for appellate review. State v. Garrett, 226 S. W. 6; State v. Jackson, 283 Mo. 24; State v. Mann, 217 S. W. 69.

DAVID E. BLAIR, J.—Appellant was convicted of the crime of assault with intent to kill without malice aforethought, was sentenced to imprisonment in the penitentiary for two years and has appealed.

He has not favored us with a statement and brief, but has filed a complete transcript. The evidence on

the part of the State tended to show that the defendant assaulted one Arthur Warden, near Dora, in the northeast corner of Ozark County. Warden and the defendant had attended church services on the evening of September 22, 1920, and after the dismissal of the services defendant approached Warden in a threatening manner and with a knife in his hand, and some of the witnesses stated that he asked him if he wanted or intended to kill another horse, while others testified that he asked him if he wanted to steal another horse. Warden was peaceably standing by at the time. Warden said that he had not stolen a horse and asked defendant to stay away from him. Defendant advanced toward Warden with a knife in his hand and struck at him therewith and Warden backed away. Defendant then stooped to pick up a rock and threw it at Warden, and Warden seized a stick of wood and struck the defendant over the body with it three or four times until the stick broke in two. Warden then started to run and defendant followed him. Warden stumbled over a log, and the defendant fell on top of him, and they there grappled, and defendant cut Warden with the knife on the arm, leg and body, seriously wounding him.

The evidence on behalf of defendant tended to show that all he did was to approach Warden and say, "You are going to shoot my horse, are you?"; that defendant had no knife at that time; that Warden immediately struck defendant with a knife in the vicinity of the heart; that Warden then got behind a tree, and that appellant pursued him and Warden struck him with a club; that thereupon appellant cut him with a knife. Defendant claimed that he did not have a knife in his hand when the difficulty began, and several of his witnesses testified that they saw no knife at any time. Defendant was also seriously injured. The trial court gave instructions fully covering the issues before the jury, including assault with intent to kill with malice aforethought, as well as assault with intent to kill without malice, of which latter

crime defendant was convicted. The jury returned the
following verdict: "We, the jury, find the defendant,
Jas. Hubbs, guilty of felonious assault without malice,
and cannot agree as to punishment." The court there-
upon sentenced the defendant upon said verdict to im-
prisonment in the State Penitentiary for a term of two
years. Defendant unsuccessfully moved for a new trial
and in arrest of judgment.

The grounds relied upon in the motion for a new
trial are that the verdict is against the weight of the
evidence and against the law and the evidence; that the
court erred in respect to all the instructions given; that
the court admitted incompetent, irrelevant and imma-
terial testimony on the part of the State, and excluded
relevant and competent testimony on the part of the de-
fendant; "4th. Because the court erred in orally in-
forming the jury after they retired for deliberation and
after the issues joined had been to them submitted 'that
they could return a verdict of guilty and not agree on the
punishment;'" that it was conclusively shown upon
polling the jury that the verdict returned was not the
verdict of the twelve men who composed the jury, and
because the court under all the circumstances surround-
ing the trial should have rejected the verdict and sent
the jury back into the jury room for further delibera-
tion, and, lastly, because the evidence is insufficient to
sustain the verdict.

I. Considering the last ground first, we are of the
opinion that there was ample evidence to take the case
to the jury and to sustain its verdict. It was the ex-
clusive province of the jury to weigh the testimony and
to determine what credit should be given to the testimony
of the various witnesses. If the jury believed
Sufficient
Evidence. the testimony of the witnesses on behalf of
the State, the substance of which we have
above detailed, there was abundant evidence to support
the verdict. The question of the weight of the evidence

was for the trial court and is not one for consideration by this court.

II. The motion for new trial attacked the sufficiency of all the instructions given by the court. Since we are favored with no brief pointing out the alleged defects in the instructions, we have examined them all very care-

Instructions.　fully. We find no error therein. They all appear to be in usual and often approved form. The record fails to disclose any objection on the part of the defendant to the propriety or sufficiency of said instructions.

III. We have carefully read the record to determine whether the court admitted incompetent, irrelevant or immaterial testimony on the part of the State or excluded competent, relevant or material testimony offered by the defendant, as it is our duty to do under this sort

Competent Evidence.　of an assignment. [State v. Noland, 111 Mo. 473, l. c. 492; State v. Barrington, 198 Mo. 23, l. c. 76; State v. Smith, 237 S. W. 483.] We have only found seven or eight instances in the entire record where rulings adverse to the defendant were made by the court and, in each and every instance where testimony was admitted over the objection of the defendant, we are persuaded that such testimony was properly admitted. In all instances where testimony offered by the defendant was excluded, either the defendant made no offer of proof or was subsequently permitted to show the very matter previously excluded. We cannot see where any good purpose can be served by reciting the testimony covering more fully the above instances. We are fully satisfied that there is no merit in the contention of the defendant on this point.

IV. The transcript shows the following:

"After the jury returned into open court their verdict, and the verdict was read, the court inquired of them if that was their verdict, to which they all assented. Mr.

Tom R. Moore was then asked by the court if he desired to have the jury polled, to which he replied in the negative. The jury was then discharged and the court assessed the punishment at imprisonment in the State Penitentiary for a term of two years.''

**Verdict of Guilty: Disagreement on Punishment.**

"After the sentence was assessed by the court the following examination of the jurors took place:

"By Mr. Moore: Comes now the defendant, by his counsel, and moves the court to reject the verdict for the reason that under the charge it is the duty of the jury to assess the penalty.

"By The Court: The motion will be refused.

"By Mr. Moore: The defendant, by his counsel, duly excepts to the ruling of the court.''

The contention that the court should have rejected the verdict because the jury failed to assess the punishment is without merit. The action of the court in receiving the verdict in such form is fully authorized by Section 4048, Revised Statutes 1919, which provides that where the jury returns a verdict of guilty, but fails to agree as to the punishment, the punishment shall be fixed by the trial court.

The record shows that defendant's counsel was present when the jury returned its verdict, waived polling the jury and at that time made no objection to the court receiving the verdict and discharging the jury. It was only after he found that the trial judge had imposed a term in the penitentiary upon his client that he raised his voice in protest against the regularity of the verdict. We will not permit a defendant to raise in this court a question he did not raise in due time in the court below, or to sit by apparently acquiescing and expecting a light sentence and then complain when he finds himself disappointed in the action of the trial court.

V. After having waived polling the jury before their discharge by the court and after the court had as-

sessed the punishment, counsel for defendant proceeded
to poll the discharged jurors, to show that some of the
jurors had agreed to the verdict with
Polling Jury
After Discharge.
the understanding that a fine was to be
imposed upon the defendant. Some of
them so stated. It does not appear how such polling came
to take place. Quite likely the individuals who had com-
posed the discharged jury had not yet left the court
room. We know of no practice which will permit a
litigant to poll the members of a jury after its discharge.
[Norvell v. Deval, 50 Mo. 272, 1. c. 273.] The defendant
waived his right to poll the jury before the verdict was
accepted and sentence imposed. Disappointment with
the court's action in imposing an unexpectedly heavy
sentence did not revive this right. [38 Cyc. 1874.] In
any event, in polling the jury defendant was limited to
inquiry touching the fact of the concurrence of the jur-
ors in the verdict as returned. It was not proper to in-
quire into the reasons actuating the respective jurors in
so concurring. [Poulson v. Collier, 18 Mo. App. 583;
1. c. 603.]

VI. Appellant contends that error was committed
in that the trial court instructed the jury that it might
return a verdict finding the defendant guilty without
agreeing upon the punishment. The bill of exceptions
allowed and signed by the trial judge shows that after
the verdict had been returned by the
Instruction:
Form of Verdict:
Disagreement
on Punishment.
jury and accepted by the court and the
jury discharged and after sentence had
been entered upon the punishment as-
sessed by the court, the following oc-
curred:

"Comes now the defendant, by his counsel, and fur-
ther excepts the (to) the verdict for the reason that
while the jury were deliberating the court inquired of
them how they stood as to numbers and the foreman re-
ported that they had agreed as to the guilt of the de-
fendant, but could not agree as to the punishment, and

inquired if they could return that kind of a verdict. To which the court replied that they had that right. Which was over the objections and exceptions of the defendant.''

No written instruction on this point appears in the record. It may be gathered from the questions of counsel and the court when inquiries were made of the individuals lately composing the jury that, after the jurors had been deliberating for about two hours, the court inquired of them concerning the state of their deliberations. The court was then informed that the guilt of the defendant had been agreed upon, but that the jury could not agree as to the punishment, and inquiry was made of the court whether that sort of verdict could be returned by the jury. We assume from the record that the court then informed the jurors they could return a verdict in such form.

In Fooxe v. State, 7 Mo. 502, construing Revised Statutes 1835, Art. VII, sec. 4, which is identical in the particular part involved here with Section 4048, Revised Statutes 1919, NAPTON, J., said:

''This law imposes on the jury the duty of inflicting the punishment, nor has the court any right to fix the punishment, unless the jury disagree, or do not by their verdict inflict any punishment. But the court in this case told the jury, in substance, that this was no part of their duty, and they had authority to bring in a general verdict. Whereas the power of the court is merely contingent, not primary, and only to be exercised where a failure of duty, or a disagreement on the part of the jury, requires its exercise.''

The Fooxe Case was followed by GANTT, J., in State v. Gilbreath, 130 Mo. 500. In the Gilbreath Case the instruction held to be erroneous appears to have been given with the general instructions prior to the retirement of the jury for deliberation. In such case what was said in the Fooxe Case that the court ''told the jury, in substance, that this was no part of their duty,''

was peculiarly applicable—more so, indeed, than the facts of the Fooxe Case called for. In the Fooxe Case the jury had been out over night and had reported a disagreement. Thereupon the court, at the instance of the circuit attorney, and without request from the jury, instructed the jury "that they had the right and authority to return a general verdict of guilty without assessing any punishment."

Whatever may be said of the soundness of the rule announced in the Fooxe Case on the facts therein, the facts in this case do not call for the application of that rule. There, as here, the jury agreed on the question of guilt and disagreed on the punishment. But in the Fooxe Case the jury did not ask for further instructions, and did not even inform the court of the character of their disagreement. Here the jury not only informed the court of the exact nature of their disagreement, but also inquired whether they could return a verdict without fixing the punishment. Section 4047, Revised Statutes 1919, which is in all respects identical with Article VII, section 3, Revised Statutes 1835, provides that where there is any discretion or alternative concerning the kind or extent of the punishment, the jury may assess and declare the punishment and the court shall render judgment accordingly. Section 4048 provides that when the jury finds a verdict of guilty and fails to agree on the punishment, then the court shall assess and declare it.

It is the primary duty of the jury to assess the punishment. To permit the court in the first instance to point out the way for the jury to avoid its duty in this regard, as was done in the Gilbreath Case, may well be regarded as contrary to the policy of the law. But in the absence of a mandatory provision of the statute that the jury shall assess the punishment, no good reason appears why the court may not tell a jury, agreed upon guilt but unable to agree upon the punishment and in response to inquiry from the jury, that such verdict will be received.

Is it error to tell the jury what the law is when it makes such inquiry? We think not. If the jurors had experimented by returning such a verdict on their own motion, they would have learned just what the court told them when they asked about the law, to-wit, that their verdict was perfectly legal and entirely acceptable in that form.

Support for this view is found in State v. Emery, 76 Mo. 348, wherein it was held not to be reversible error for the prosecuting attorney to tell the jury in argument that " 'if you find him guilty and cannot agree as to the term of punishment you ought to inflict, you can return into court this general verdict of guilty, and his honor, the judge, will fix the punishment.' " Judge SHERWOOD passed this point by merely remarking that the prosecuting attorney simply stated the law when he so advised the jury. The Fooxe Case was before him when he so declared.

In line with what we said, supra, is a further paragraph from the same case of State v. Emery:

"Nor do we discover any ground for reversing the judgment because of the concluding remarks of the prosecuting attorney. If every random or hasty remark of such an official, made in the heat of debate, is to be tortured into a reason for reversing a judgment of conviction, few such judgments would stand, and few punishments be inflicted. Besides, the prosecuting attorney in telling the jury that if 'you find the defendant not guilty we have no appeal, and your verdict ends the case so far as the State is concerned,' was simply telling the jury the truth; what each juror doubtless knew before the statement was made. Has it come to this, that the truth is to be assigned for error in this court?"

We think the rule laid down in the Fooxe Case should not be followed here. We do not say the court should be permitted to instruct the jury in the first instance that it may agree upon a verdict of guilt and make no finding as to punishment, and thus avoid its primary duty. But where, as here, the jury has agreed

upon the guilt of the defendant and has disagreed as to the punishment and reports such disagreement to the court and asks for further instructions, it is not error for the court to tell the jury what the law provides, to-wit, that it may agree on the guilt of the defendant and leave his punishment to the court. In the language of Judge SHERWOOD: "Has it come to this, that the truth is to be assigned for error in this court?" What we have said above fully answers the question in favor of the correctness of the trial court's action.

VII.   The motion in arrest attacks the sufficiency of the indictment. It properly charges every element of the offense of assault with intent to kill with malice afore-

Indictment.    thought and with a deadly weapon. It is in the form that has been approved time and again. [Sec. 3262, R. S. 1919; Kelley's Criminal Law, p. 505; State v. Baird, 271 Mo. 9, l. c. 13; State v. Doyle, 107 Mo. 36, l. c. 40; State v. Bond, 191 Mo. 555, l. c. 565.] The indictment was sufficient to authorize conviction of a lesser offense necessarily included in the indictment. [Sec. 3693, R. S. 1919.]

Finding no error in the record, we accordingly affirm the judgment.   All concur.