No. 16,638.

MARTINEZ *v.* ASHTON ET AL.
(233 P. [2d] 871)

Decided June 18, 1951.

Mr. MARSHALL QUIAT, for petitioner.

Mr. PIERPONT FULLER, Mr. ABE L. HOFFMAN, Mr. E. F. CONLY, Mr. EDWARD O. GEER, for respondents.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Disposition of this matter is now made on the response to our rule to show cause why respondents should not be restrained from proceeding further in an action pending in the county court of the City and County of Denver, wherein the Honorable Howard O. Ashton as judge of said court and respondent herein, granted a new trial of petitioner on the court's own motion "based upon the verdict on the grounds of misconduct of the jury."

Four days after a verdict of not guilty on the charge of violation of city ordinances was returned by the jury and received by the court and judgment entered thereon, the respondent trial court, on his own motion, summoned the jurors before him and took testimony from each of the six jurors concerning the nature of the verdict so returned. This occasioned the presentment of two questions for our determination, namely: Can a verdict be impeached by the affidavit or testimony of a juror or jurors; and does the order for a new trial place the petitioner in double jeopardy?

The record before us consists only of the reporter's transcript of the proceedings had when the jury reported; a copy of the verdict; the testimony of all of the jurors; the objections thereto; and the finding and order of the court.

This jury consisted of six women and after one and one-half hour's deliberation, they returned to the jury box with a verdict:

"Court: Ladies of the jury, have you arrived at a verdict?"

(Voices in Jury Box) "We have."

"Court: You will hand your verdict to the bailiff.

"Court: The verdicts as submitted by the jury in this case find the defendant not guilty of any of the offenses charged. Judgment will be entered based upon these

verdicts. Anything further? The defendant to have returned to him his costs. Bond will be released; cash returned to bondsman."

Then follows a copy of the five verdicts. The record shows that these verdicts were returned at 3:52 P. M. February 5, 1951. On February 9, 1951, the respondent court caused counsel for the city and for the petitioner to be present in court and the court announced that on his own motion the jurors would be called to the stand for examination. It was contended by the attorney for the city that because two of the jurors had made their dissatisfaction about the verdict known to the court and others, no verdict had been reached in the case, and that there was no "verdict, as such, at all."

 Ordinarily, a discussion of the testimony of the jurors would be unnecessary because it is universally held, and by this state as well, that a verdict cannot be impeached upon the affidavits of jurors; therefore, it follows that the trial court had no authority to summons the jurors before him for examination as to what occurred in the jury room. *Waite v. People,* 83 Colo. 162, 262 Pac. 1009. This court in the later case of *Boyles v. People,* 90 Colo. 32, 6 P. (2d) 7, placed a mild modification by quoting with approval from *United States v. Reid,* 53 U.S. 360: "Cases might arise in which it would be impossible to refuse them [such affidavits] without violating the plainest principles of justice;" and from *McDonald v. Pless,* 238 U. S. 264: "This might occur in the gravest and most important cases." However, this court disposed of the matter by adopting the following language from the McDonald case: "Without attempting to define the exceptions, or to determine how far such evidence might be received by the judge on his own motion, it is safe to say that there is nothing in the nature of the present case warranting a departure from what is unquestionably the general rule."

The substance of the testimony of all the jurors is to the effect that on reaching the jury room and prior to

any discussion of the case, there was no agreement that the majority vote of the jurors would control. It further shows that immediately upon discussion the jury stood four to two for acquittal, then a discussion arose as to whether or not the verdict had to be unanimous. The jurors, being inexperienced, did not know. However, after more than an hour's discussion, one objecting juror said that since this was a democracy the majority should rule and she would go along. The other objecting juror said, in substance, that while she was not satisfied as to some of the charges, she did not want to cause a hung jury and did not want to stay all night, so agreed to sign a "not guilty" verdict. One of these jurors did not want to sign the verdict as foreman, but requested another juror to sign the "not guilty" verdicts. Another juror testified that the foreman inquired of each juror if it was all right for her to sign a "not guilty" verdict; and juror Beck testified that she "felt very guilty as she walked out of the courtroom to return that verdict, but handed it in." This was an admission of the last-mentioned juror that she had agreed to that kind of a verdict.

■ There is no suggestion of any tampering with the jury, coercion or bribery, or any other gross misconduct such as would allow jurors to testify or make affidavit as to misconduct. A juror can testify as to such misconduct, but not as to the wrong exercise of his judgment or misunderstanding as to instructions or other matters that inhere in the verdict.

It is contended by the respondent that all of this confusion on the part of the jurors constituted misconduct. We cannot accept this contention as applied to the facts in this case.

■ ■ The jurors, or any one of them, having returned to their jury box and announced the reaching of a verdict and permitting the verdicts to be returned and read to, and received by, the court, and judgment entered thereon, are estopped from and after that moment to impeach the verdict. This is doubly true where time

has elapsed such as occurred here, and where the jurors have discussed the facts with other persons after separating. If the verdict when announced, was not the verdict of any juror, it was the duty of that juror to speak, otherwise he is foreclosed by his silence. If we held to the contrary, no verdict would be safe from fraud and abuse. It follows that these jurors cannot now be heard to say that they did not know what kind of a verdict they were assenting to when they agreed to "go along," or to "not have a hung jury."

For the reasons herein indicated, we adhere to the rule announced in our decision in the early case of *Heller v. People*, 22 Colo. 11, 43 Pac. 124, which has not to this day been modified or overruled. We have thus determined that the trial court erred in granting a new trial, which eliminates the necessity of deciding the other question, that of double jeopardy.

It is ordered that the rule to show cause is made absolute.