STATE of Missouri,
Plaintiff-Respondent,

v.

Nicky HARDING, Defendant-Appellant.

No. 51121.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 23, 1987.

Motion for Rehearing and/or Transfer
Denied July 30, 1987.

Application to Transfer Denied
Sept. 15, 1987.

the first degree, kidnapping and armed criminal action, Sections 569.020, 566.100, 565.110 and 571.015, RSMo 1978. He was sentenced as a prior and persistent offender to a combined term of twenty-seven (27) years. We affirm.

On December 14, 1984, Opal Madden stopped at the "C & K Barbecue" at 1512 Goodfellow. As she was returning to her car defendant approached her and asked for a "jump" start for his car. When Madden refused, defendant then asked for a ride. As she stepped away and into her car, he placed his hand over the car door preventing her from closing the door. He then placed a gun in her face and forced his way into her car.

Madden was instructed to drive defendant on Highway 70 to Kingshighway. He demanded her wallet containing $18.00, her watch, papers in her purse and her ring. Defendant, angry about what he received from Madden, sexually fondled her. Finally, defendant told her to drive into an alley where he pushed her out of her car.

On December 15, 1984, Officer Timmons took a description of the perpetrator from Madden. On December 30th, Madden reviewed mug-shots and identified a 1980 photograph and a 1983 photograph of defendant. Defendant was subsequently arrested and identified in a line-up on March 9, 1985. Madden positively identified defendant at trial.

Defendant, on eight points, appeals his convictions and sentences. The claims of error are: I.—The court erred in failing to suppress victim identification because the elements of reliability are lacking; II.—The court erred in failing to order the state to furnish the name of a psychiatrist who treated the victim after the robbery and assault; III.—Defendant was denied due process and equal protection of the law because the arrest which initiated the prosecution was not based upon probable cause; IV.—The court erred in permitting the state to introduce "mug-shot" books which prejudiced the defendant by apprising the jury of defendant's prior criminal record; V.—The verdict directing instructions were not supported by the evidence; VI.—There

William P. Russell, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant appeals a conviction by jury for first degree robbery, sexual abuse in

was an insufficiency of substantial creditable evidence to support the convictions; VII.—The court refused to permit the sole black juror to inform the court that the announced verdict was not her verdict; and, VII.—The state excluded blacks from the jury, a *Batson v. Kentucky* challenge.

## I.

■ Our review of defendant's challenge to the identification testimony is guided by the law on this issue as set forth in *State v. Higgins*, 592 S.W.2d 151, 158–160 (Mo. banc 1979). "Reliability, not suggestiveness, 'is the linchpin in determining the admissibility of identification testimony' ..." *Id.* at 160. Where a pretrial identification occurs the court will first consider whether that event was impermissibly suggestive, *State v. Toney*, 680 S.W.2d 268, 275 (Mo.App.1984), and thereafter, consider the reliability of the in-court identification. *State v. Toney*, 680 S.W.2d at 275. Reliability involves a consideration of the opportunity of the witness to view the actor at the time of the crime; the degree of attention exercised; the accuracy of a prior description; the level of certainty demonstrated by the witness; and, the length of time between the crime and the confrontation when identification occurs. *State v. Higgins*, 592 S.W.2d at 160.

■ In the present case, the victim had ample opportunity over a period of twenty minutes or more to view her assailant. Within two weeks of the event she identified defendant from photographs and on March 9, 1985, she identified defendant in a line-up. She had ample reason to observe the robber. Her description on the day of the events and subsequently was not incompatible with defendant. In spite of any appearance of differences in the immediate description, the photographs, and the defendant at line-up and in court, the victim was "certain" of her identifications. The passage of time between the events and identifications was relatively inconsequential. In summary, the elements for determining the reliability of identification were present and the court did not err in permitting the testimony for the consideration of the jury. Further, all of the factors were the subject of adequate cross-examination. Point denied.

## II.

During pre-trial discovery defendant learned that the complaining witness had consulted a psychiatrist after the events of December 15, 1984. The trial court refused to compel the state to reveal the name of the psychiatrist. Defendant claims error on the basis that the identity of the psychiatrist may have led to exculpatory evidence and the refusal denied defendant an opportunity to adequately prepare the defense. In essence, defendant claims that consultation with the psychiatrist may have developed an effective factual basis to impeach the eye-witness.

■ We reject this claim of error for several reasons. First, defendant's request is not covered by Rule 25.03. The rule does not require the state, upon written request, to disclose the name of a psychiatrist chosen by the victim of a crime unless the psychiatrist is intended as a witness for the state or unless the state has in its possession or control material or information which tends to negate the guilt, mitigate the degree, or reduce the punishment. Rule 25.03(A)(1–9).

Second, the request was made without supporting fact assertions that the testimony of the psychiatrist would, as opposed to may, benefit defendant.

Third, it was held in *State v. Moore*, 642 S.W.2d 917, 925 (Mo.App.1982), psychiatric examinations of witnesses who testify against an accused may be denied on the rationale of confidentiality.

Fourth, the in court testimony which we have reviewed from the transcript indicates that the victim was a responsive and competent witness. Nothing in her testimony indicates any psychiatric condition which belies her competency. Defendant did not object to the testimony on competency grounds. Point denied.

## III.

In his third point defendant claims that the trial court erred in denying a motion to dismiss on the ground that his arrest was without probable cause. We reject this claim of error primarily because there was no motion to dismiss on this ground presented to the trial court. The issue was raised in connection with defendant's motion to suppress identification. However, defendant failed to object to his arrest at trial or to raise this issue in his motion for new trial. Accordingly, the issue is not properly preserved for appeal and may be considered only as a matter of plain error. *State v. Davis,* 677 S.W.2d 370, 372 (Mo. App.1984).

■ In any event, the claim is without merit. The arrest was made only after a positive identification by the victim. Further, an unlawful arrest is not a recognized ground to void a subsequent conviction. *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *State v. Bannister,* 680 S.W.2d 141, 144 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985).

## IV.

■ The trial court admitted two exhibits which were police mug-shot books. Defendant claims that the books which contained hundreds of pictures which informed the jury of defendant's prior criminal record. These exhibits have not been furnished to this court. Although the exhibits were admitted, by order of the trial court, they were not shown to the jury. They were used only to support the testimony of the victim that she consulted photographs within the exhibits when she identified defendant. Any information associated with the photographs which would tend to indicate that they were photographs of individuals, including defendant, with a prior criminal record was not presented to the jury. Defendant's claim of error is not supported by fact. Further, it has been held that a trial court has broad discretion in admitting "mugshots" which do not indicate prior criminal activity of the individual depicted and upon which criminal identifying material is concealed from the jury. *State v. Quinn,* 693 S.W.2d 198, 200 (Mo.

App.1985). It has also been held that where an identification through the use of photographs occurs they may be admitted to help the jury determine the accuracy or inaccuracy of the identification. *State v. Crossman,* 464 S.W.2d 36, 41 (Mo.1971). Point denied.

## V–VI.

■ Appellant contends that the state failed to make a submissible case on the crimes charged and therefore it was error to submit the verdict directing instructions. "Our consideration of the issue of sufficiency of evidence is directed to whether the evidence, considered in a light most favorable to the state and all inferences therefrom, disregarding evidence to the contrary, is sufficient to make a submissible case (citation omitted). We review the record to ascertain whether the guilty verdict is supported by substantial evidence, (citation omitted), which is evidence the jury could find the issue in harmony therewith." *State v. Ousley,* 668 S.W.2d 643, 644 (Mo.App.1984). The testimony of the victim of a sexual offense is sufficient to sustain the conviction without other corroboration unless that testimony is so contradictory or in conflict with physical facts, surrounding circumstances in common experiences as to be unconvincing. *State v. Cooper,* 673 S.W.2d 848, 849 (Mo.App. 1984). *See, State v. Berry,* 593 S.W.2d 254, 255 (Mo.App.1980).

■ In the present case, there is sufficient evidence to support a finding that appellant committed robbery, kidnapping and sexual abuse of the prosecuting witness as well as armed criminal action. Opal Madden testified at trial that the defendant forced his way into her car, pointed a gun toward her, and forced her to drive around. She testified the defendant told her to stop the car and took her personal property. She testified defendant sexually abused her. Madden positively identified this defendant at the trial. Her testimony, if believed, was sufficient. Points five and six are denied.

## VII.

Defendant's next point is, "the court erred in refusing to allow a black juror to

tell the court that the verdict was not her verdict, when she was not polled." The defendant did not request the court to poll the jury. After the defendant was found guilty and the jury was discharged, a discussion regarding setting an appeal bond and a court date for sentencing transpired. Thereafter, defendant's counsel stated, "One further thing, Your Honor. We have one juror here who had something to say to the Court. She called me *outside* and she said the verdict was not her verdict, so I wish to put that on the record." (emphasis ours) Thereafter, the state objected to the statement of counsel and an exchange of objections were then proffered by both counsel. The court then stated:

THE COURT: Mr. Russell, I am not going to proceed with any hearing today. If you have a legal basis and/or factual for the issue you're raising I believe the proper time to present that is with your motion for new trial so—

MR. RUSSELL: Well, I'm not so sure what he said is the law, Your Honor.

THE COURT: It may not be in which case I would hope to have from you a statement of what you think the law is at the appropriate time and with the proper legal basis and perhaps some additional facts at the appropriate time we can take this matter up. I don't think right now is the appropriate time.

Defendant attached an affidavit of one juror to the motion for new trial. It states the verdict was not her verdict; that she knew the minds of the other jurors were made up before the instructions were read and would vote guilty no matter how the court instructed; and she waited for someone to ask her if the verdict was hers and neither the judge nor counsel asked. Further, after being dismissed, she informed the legal assistant of defense counsel that the verdict rendered was not her verdict and she wanted to talk to the judge. The judge refused to listen to her.

■ Defendant seeks to impeach the verdict of the jury through an affidavit, filed with a motion for new trial, of this juror. "It is well settled law in this state that a juror will not be heard to impeach his own verdict or the verdict of a jury of which he was a member." *State v. Gabriel,* 342 Mo. 519, 116 S.W.2d 75, 79 (1938). *See also, State v. Hungate,* 98 S.W.2d 537, 538 (Mo.1936). "[J]urors speak through their verdict, and cannot be allowed to violate secrets of the jury room and tell of any partiality or misconduct that transpired there, nor speak of methods which induced or operated to produce the verdict, and this has become the settled law of this state." *State v. Keller,* 104 S.W.2d 247, 249 (Mo.1937) (citations omitted). The record expressly shows the verdict was returned in "open court." The court asked the jury if they had reached a verdict in this matter at which time several of the jurors indicated in the affirmative to the court. The court then asked the clerk to receive the verdict forms and to read the verdicts of the jury. Counsel for the defense was then given the opportunity to poll the jury. He declined. The court then had the defendant removed from the court room and discharged the jury. Thereafter, the defendant was returned to the court room and the issues of bond and setting a sentencing date were then determined. The record shows that defendant's counsel was present when the jury returned its verdict, waived polling the jury, and at that time made no objections to the court receiving the verdict and discharging the jury. Defendant thereby waived his right to poll the jury before the verdict was accepted and the sentence imposed. *State v. Hubbs,* 294 Mo. 224, 242 S.W. 675, 677 (1922).

The right of the defendant to have the jury polled, is recognized by Supreme Court Rule 29.01(d) which states, "When a verdict is returned and *before it is recorded* the jury shall be polled at the request of any party or upon the court's own Motion." (our emphasis) The committee note states that this rule is the same as Fed.R.Crim.P. 31(d). The federal courts have held that this rule "is of ancient origin and of basic importance. The object is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that

a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented." *Miranda v. United States*, 255 F.2d 9, 17 (1st Cir.1958) (citations omitted). "It is, however, a right which must be reasonably exercised and if not requested before the verdict is recorded it comes too late." Citing *State v. Hubbs*, 242 S.W. 675 (Mo.1922). *Miranda*, 255 F.2d at 17. In *Miranda*, the court determined the defendant was not afforded a reasonable opportunity to have the jury polled.

The facts in the present case are clearly distinguishable from the facts in *Miranda*. In the present case, the verdict was returned without protest or any indication of any non-concurrence of any juror. The jury had been correctly instructed that the verdict must be unanimous. If the verdict is not unanimous, it is the duty of the juror to speak or otherwise be foreclosed by his silence. *See, Martinez v. Ashton*, 124 Colo. 23, 233 P.2d 871, 873 (1951). The juror could have expressed her dissent when the verdict was read and before it was recorded and prior to the discharge of the jury. *State v. Smith*, 298 S.W.2d 354, 356 (Mo.1957). The record does not show on the part of any juror or jurors an indication that the verdict was not hers, or theirs, prior to or after the time the clerk read the verdicts of the jury or after defense counsel declined to have the jury polled and before discharge.

It is common practice for the verdict to be read to the jury when returned and the jury be asked that such is their verdict. *Jordan v. St. Joseph Ry. Light, Heat & Power Co.*, 335 Mo. 319, 73 S.W.2d 205, 211 (1934). "Before the jury is asked to state what their verdict is, some effort should be made to establish that they have, in fact, agreed on the verdict." 23A C.J.S. Section 1391 (1961). "If any juror does not agree to the verdict as rendered, it is his duty to express his dissent before the verdict is recorded, since it is not perfected until the jurors have expressed their assent." 23A C.J.S. Section 1391 (1961). Although it is common practice after the verdict is read for the court to ask if such is their verdict, there is no statute or rule compelling the court to do so in Missouri. On appeal the defendant will not be heard to complain of this lack of common formality when he was offered the opportunity to assure himself of the jury's assent and affirmatively waived it.

Furthermore, it has been consistently recognized that a balance of priorities must be established in regard to jury inquisitions because it is clear such inquisitions are not conducive to fair trials. *Castaldi v. United States*, 251 F.Supp. 681, 683 (1966). The *Castaldi* court cited *McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915), stating:

> ... let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict.

Point denied.

## VIII.

Finally, defendant claims the court erred in permitting the state to use peremptory challenges to exclude blacks from a jury to decide the fate of a black defendant. This case was tried in December, 1985. Defendant attempts to raise a *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) issue. On January 13, 1987, *Batson* was held retroactive for "all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky*, 477 U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Our Supreme Court in *State v. Antwine*, No. 67720, slip opinion (Mo. banc 1987) ordered a remand to the trial court to conduct an evidentiary hearing for the purpose of determining the validity of an appellant's constitutional claim under *Batson*. However, in *Antwine* the court found that the *Batson* issue after *Griffith* presented three categories of concern. First, where no objection to any peremptory challenges or to the venire was

made in a trial then the issue was foreclosed on appeal and the constitutional challenge waived. Second, where a "partial" objection was made and the record on appeal was void of any indication of racial prejudice involving the race of the defendant, the number of black persons struck by the prosecutor or racial composition of the jury selected, then the *Batson* issue was not preserved. Only in the third situation, where defendant made a specific objection and made, or attempted to make, a record to support a *Batson* challenge, would a remand for a hearing to determine whether or not *Batson* required reversal or a retrial be ordered.

■ On the present record there is no indication of the number of black persons struck by the prosecutor, the racial composition of the jury selected or any attempt by the defendant to make such a record. Nor was there any objection to either the peremptory challenges or the venire chosen. We find the constitutional challenge on the ground presented waived.

We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.